# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-DR-00647-SCT

*CHARLES RAY CRAWFORD*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | TIPPAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS C. LEVIDIOTIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JAMES M. HOOD, III |
| DISTRICT ATTORNEY: | JAMES M. HOOD, III |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - POST CONVICTION RELIEF |
| DISPOSITION: | POST-CONVICTION RELIEF DENIED - 12/04/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**McRAE, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Charles Ray Crawford was convicted of burglary, rape, sexual battery, and capital murder in the death of Kristy Ray. Crawford was then sentenced as a habitual offender to death by lethal injection.  This Court affirmed Crawford's convictions and sentences in ***Crawford v. State***, 716 So.2d 1028 (Miss. 1998).  Subsequently, this Court denied the motion for rehearing on June 18, 1998.  The United States Supreme Court denied Crawford's petition for

certiorari on November 30, 1998. *Crawford v. Mississippi*, 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 458 (1999). Crawford's motion for rehearing was denied on February 22, 1999. *Crawford v. Mississippi*, 525 U.S. 1172, 119 S.Ct, 1100, 143 L.Ed.2d 99 (1998).

¶2. Crawford filed his pro se petition for post-conviction relief in this Court. In accordance with *Jackson v. State*, 732 So.2d 187 (Miss. 1999), this Court remanded the post-conviction proceedings to the Tippah County Circuit Court for appointment of qualified counsel to represent Crawford on June 24, 1999.

¶3. Counsel was appointed and filed a Petition for post-conviction relief, which is presently before this Court. Subsequent to the filing of his brief and upon his request, the Circuit Court of Tippah County relieved counsel of further responsibility and appointed the Mississippi Office of Capital Post-Conviction Counsel to continue. Contemporaneously with his petition for post-conviction relief, Crawford has filed an Application for Leave to File Motion to Vacate the Judgment and Death Sentence.

**FACTS**

¶4. Since Crawford has raised a rather large number of issues and sub-issues, the Court finds that convenience and efficiency dictate that only the facts pertinent to the deciding of this petition need be addressed in this decision. For a more detailed statement of facts, see *Crawford*, 716 So.2d at 1032-37.

**STANDARD OF REVIEW**

2

¶5.    Post-conviction review is a limited proceeding whereby this Court will only review "those objections, defenses, claims, questions, issues or errors which in practical reality could not or should not have been raised at trial or on direct appeal." *Cabello v. State*, 524 So.2d 313, 323 (Miss. 1988) (quoting Miss. Code Ann. § 99-39-3(2) (Supp. 2003)).

¶6.    Claims and theories that could have been but were not presented to the trial court or to this Court on direct appeal are procedurally barred from being reviewed by this court on post-conviction review. *Lockett v. State*, 614 So.2d 888, 893 (Miss. 1992). Likewise, all issues, both factual and legal, that were decided at trial and/or on direct appeal are barred from review as *res judicata*. Miss. Code Ann. § 99-39-21(3) (Supp. 2003).

¶7.    The burden of proving that no procedural bar exists falls squarely on the petitioner. *Lockett*, 614 So.2d at 893. For this Court to hear claims or theories that were not presented at trial or on direct appeal, the petitioner must show cause for not having already brought the claim and that this caused actual prejudice to his case. *Lockett v. State*, 614 So.2d at 893. To create an exemption from the procedural bar under res judicata principles, petitioner must show that his "claim is so novel that it has not previously been litigated" or that "an appellate court[1] has suddenly reversed itself on an issue previously thought settled." *Id*. (quoting *Irving v. State*, 498 So.2d 305, 311 (Miss. 1986)). Petitioner will also defeat procedural bar if he can demonstrate that "he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that had such been introduced at trial

---

[1]The applicable statute identifies these courts as the Supreme Court of the United States and the Mississippi Supreme Court. See Miss. Code Ann. § 99-39-23(6).

it would have caused a different result in the conviction or sentence. Miss. Code Ann. § 99-39-23(6).

¶8.     In his petition, Crawford raises a plethora of ineffective assistance of counsel claims.[2]

The standards applicable to an ineffective assistance of counsel claim are:

> The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." ***Strickland v. Washington***, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A defendant must demonstrate that his counsel's performance was deficient and that the deficiency prejudiced the defense of the case. *Id.* at 687, 104 S.Ct. at 2064. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." ***Stringer v. State***, 454 So.2d 468, 477 (Miss.1984), citing ***Strickland***, 466 U.S. at 687, 104 S.Ct. at 2064. The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Id.*
> Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ***Stringer***, 454 So.2d at 477, citing ***Strickland***, 466 U.S. at 689, 104 S.Ct. at 2065. Defense counsel is presumed *competent*. ***Finley v. State***, 725 So.2d 226, 238 (Miss.1998), quoting ***Foster v. State***, 687 So.2d 1124, 1130 (Miss.1996): ***Johnson v. State***, 476 So.2d 1195, 1204 (Miss.1985).
> Then, to determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Mohr v. State***, 584 So.2d 426, 430 (Miss.1991). This means a "probability sufficient to

---

[2]This Court will address such allegations on post-conviction review when, as here, petitioner was represented by same counsel at trial and on direct appeal and is represented by different counsel on petition for post-conviction review. See ***Ford v. State***, 708 So.2d 73, 74 (Miss. 1998); ***Dunn v. State***, 693 So.2d 1333, 1339-40 (Miss. 1997).

undermine the confidence in the outcome." *Id.* The question here is whether there is a reasonable probability that, absent the errors, the sentence--including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death. *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068.

There is no constitutional right then to errorless counsel. *Cabello v. State,* 524 So.2d 313, 315 (Miss.1988); *Mohr v. State,* 584 So.2d 426, 430 (Miss.1991) (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end. *Neal v. State,* 525 So.2d 1279, 1281 (Miss.1987); *Mohr v. State,* 584 So.2d 426 (Miss.1991). *Davis v. State,* 743 So.2d 326, 334 (Miss.1999), citing *Foster v. State,* 687 So.2d 1124, 1130 (Miss.1996).

*Woodward v. State,* 843 So. 2d 1, 7 (Miss. 2003).

**I.      Whether Crawford was denied due process by the failure to disclose an F.B.I. Report Prior to trial**.

¶9.     To succeed on a motion for a new trial based on newly discovered evidence, the petitioner must prove that new evidence has been discovered since the close of trial and that it could not have been discovered through due diligence before the trial began. *Meeks v. State*, 781 So.2d 109, 112 (Miss. 2001) (citing *Smith v. State*, 492 So.2d 260, 263 (Miss. 1986)). In addition, the petitioner must show that the newly discovered evidence will probably produce a different result or induce a different verdict, if a new trial is granted. *Id*. This requires a showing that the evidence is material and is not merely cumulative or impeaching.[3] *Id*.

---

[3]However, the United States Supreme Court has held that in situations where the reliability of a certain witness may be determinative of the outcome, non-disclosure of material credibility evidence may be grounds for a new trial. See *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).The discovery of non-material, impeachment evidence alone is usually not considered sufficient to warrant a new trial. *Ormond v. State*, 599 So.2d 951, 962 (Miss. 1992).

¶10. Evidence is material only if there is a reasonable probability (i.e., "probability sufficient enough to undermine confidence in the outcome") that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *De La Beckwith v. State*, 707 So.2d 547, 572 (Miss. 1997) (quoting *United States v. Bagley*, 473 U.S. 667, 681, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)).

¶11. Aside from a general assertion that the non-disclosure impaired defense counsel's ability to cross-examine F.B.I. witnesses, Crawford claims that the newly discovered evidence directly contradicts the testimony of F.B.I. agent Joe Jackson. Because, according to Crawford, this new evidence "had potential to be a valid impeachment device," a new trial should be granted. We disagree.

¶12. Crawford's main argument is that the F.B.I. report contains a statement that directly contradicts Agent Jackson's testimony. At trial, Agent Jackson stated that the F.B.I. would not have been able to find the victim's body "in the time that was done without his (Crawford's) assistance." The report contains a statement that a search plane "was utilized and extremely beneficial in guiding the search team to the victim's body. In fact, it was quite possible [that the] victim might not have been located that evening without [its use]."

¶13. These statements are not directly contradictory. When read together, they indicate that it would have been difficult to find the body in a certain time frame without Crawford's assistance and difficult to find it at night without the use of the plane. In addition, an affidavit provided by agent Jackson explains exactly how the F.B.I. utilized Crawford's assistance and the plane to locate the victim's body. Thus, the F.B.I. report is of little impeachment value, much less the material value required for the grant of a new trial and this claim fails.

**II. Whether the trial court erred in failing to suppress Crawford's confessions.**

¶14.    Crawford argues that the trial court erred in failing to suppress confessions that were obtained in violation of his right to counsel under both the United States and Mississippi Constitutions.  However, this matter was taken up on direct appeal.  See *Crawford*, 716 So.2d at 1037-38.  Notwithstanding, Crawford now, for the first time, argues that his court ordered mental examination was an interrogation in violation of his right to counsel.  Due to the heightened scrutiny given to death penalty cases, we will still examine Crawford's argument that the confessions emanating from the mental examination should have been suppressed.

¶15.    In support of his argument, Crawford cites two cases, *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) and *Spivey v. Zant*, 661 F.2d 464 (5th Cir. 1981).  Upon reading these two cases, it is readily apparent that Crawford has not made the requisite showing as to this issue and his argument, therefore, is without merit.

¶16.    In *Estelle*, the United States Supreme Court considered the issue of whether a defendant's Sixth Amendment right to counsel is violated when he is not given prior opportunity to consult with counsel about his participation in a psychiatric examination.  451 U.S. at 471 n.14.[4]  The Court answered that question in the affirmative and also noted that the Sixth Amendment was violated when a defendant's attorneys receives no notice of the examination or its scope, thereby preventing counsel from giving informed advice and depriving the defendant of his assistance of counsel in making an informed decision.  *Id*. at 470-71.

---

[4] The Court noted that there is no right to have your attorney present during the examination.

¶17. The Fifth Circuit adopted this reasoning in *Spivey*. 661 F.2d at 474-75. In that case, the defendant argued that he was between counsel at the time of the examination. *Id*. at 475. The court noted that the Sixth Amendment would be violated if either the defendant had no counsel at the time of the examination or if he had counsel, but counsel was not given notice of the order for the examination. *Id*. at 475-76.

¶18. Crawford argues that he was entitled to counsel's assistance in making his decision as to whether or not to submit to testing and to what extent the tests should be performed. However, the cases he cites involve situations where there either was no counsel at the time of the examination or counsel was given no notice of the examination. Crawford alleges neither and it is apparent that counsel, at the very least, had notice of the fact that the examination would take place as he signed off on the examination order. Crawford does not argue that counsel did not have notice of the examination or its scope, but simply that he did not confer with counsel. Notwithstanding the lack of any supporting evidence, Crawford's claim appears better suited as one for ineffective assistance, for it is clear that the State upheld its end of the bargain and his argument is without merit.

**III.     Whether Crawford was improperly denied a timely appearance**.

¶19. Crawford also claims that this Court must find that his confessions were improperly admitted at trial since he was not granted an initial appearance until after officials obtained detailed confessions in violation of his right to counsel under both the Sixth Amendment to the United States Constitution and the Mississippi Constitution. While this specific issue was not litigated at trial or on direct appeal, this Court did address the legality of the same

8

confessions under both the Mississippi and Sixth Amendment's right to counsel. See

*Crawford*, 716 So.2d at 1037-38.

¶20.   However, given the heightened scrutiny of death penalty review, we will examine this

argument nonetheless, for it may be done rather quickly. In *Veal v. State*, 585 So.2d 693

(Miss. 1991), we addressed this same issue. In so doing, we made the following statement:

> Assuming arguendo, Veal's rights under Rule 1.04 were offended, relief does
> not follow. Before questioning, Veal was independently advised of his right to
> remain silent and of his right to counsel, Miranda variety, facts he freely admits.
> We have repeatedly held this advice legally adequate that, when followed by a
> knowing and voluntary waiver, a subsequent confession becomes competent
> evidence.

*Id*. at 699. This language fully addresses Crawford's argument under this issue, for even

assuming that his right to a timely appearance was offended, the record makes it quite clear that

he was explained of his rights and that he executed written waiver forms. Therefore, his

confessions were properly before the court, and his argument fails.

### IV.    Whether the form of the verdict as to aggravating factors was improper, thus requiring reversal of the sentence.

¶21.   Crawford next argues that since the jury wrote the verdict in improper form as to the

placement of the words "beyond a reasonable doubt" in reference to the aggravating factors,

that the form of the verdict was improper and thus the degree of proof required by the law was

not found.

9

¶22. We have already addressed this issue in ***Williams v. State***, 684 So.2d 1179 (Miss. 1996). There, we noted that there is no authority for the proposition that the jury must actually write the words "beyond a reasonable doubt" in its verdict. ***Id***. at 1208. In addition, we presume that a jury will follow a trial court's instructions and do as it is told. ***Id***. at 1209. Crawford has given us no reason to believe that this jury departed from its instructions, and we find his claim without merit.

**V.      Whether the venire was tainted due to the jury questionnaire mailing informing the identity of the defendant and victim**

¶23. Crawford next asserts that his Sixth Amendment right to an impartial jury was compromised by the identification of the defendant and the victim in the case through a questionnaire that had been mailed to the venire several weeks prior to jury selection. As the State points out, voir dire did cover the questions of pretrial publicity and the jurors were asked whether each of them had formed an opinion in regard to Crawford's guilt or innocence. This is similar to the situation in ***Gray v. State***, 728 So.2d 36 (Miss. 1998). There, the defendant expressed concerns over media coverage and the fact that the summons had the words "capital murder" printed on them. ***Id***. at 65-67. We noted then that any problems that such occurrences may raise can be sufficiently cured through proper voir dire. ***Id***. We find that here, just as in ***Gray***, the voir dire conducted at trial was sufficient to ensure a fair and impartial jury and that Crawford's argument, therefore, fails.

¶24. In addition, Crawford fails to cite one case for the proposition that the mere identification of parties to a case prior to jury selection is the type of occurrence for which

any resulting prejudice towards one of the parties cannot be cured by proper voir dire. Thus, the claim is also without merit.

> **VI.** **Whether at the inception of trial the diminished capacity of Crawford to assist counsel and the failure of the attorney client relationship should have been addressed by the trial court.**

¶25. Crawford also argues that he was not of the capacity to assist his counsel at trial. However, no such issue was raised at trial, nor was it brought to this Court's attention on appeal. Now, **nine** years later, do we, for the first time, find counsels' acknowledgment that there was a failure in the attorney-client relationship. We have long attempted to protect these post-conviction procedures from the distorting effect that an attorney's hindsight may have upon occurrences at trial. Therefore, we find the affidavits of counsel irrelevant to the determination of this issue and find it without merit.

¶26. Crawford also complains that the trial court "should have taken steps to afford petitioner counsel capable of maintaining a relationship with petitioner." Notwithstanding Crawford's failure to cite any authority in support of his argument, we will swiftly deal with this issue. Crawford appears to argue that the court should have granted him new counsel on its own accord. However, the burden of raising such a motion and seeing it through falls squarely on the shoulders of Crawford, himself. Not until it is apparent that counsel is incompetent or failing to act in the best interests of the defendant should the court take it upon itself to address the matter. *Stewart v. State*, 229 So. 2d 53, 56 (Miss. 1969). Crawford's argument, therefore, is without merit.

> **VII.** **Whether there was cumulative error in the guilt phase of the trial**.

11

**VIII.** **Whether there was cumulative error in the sentencing phase of the trial**.

¶27.    Crawford asserts that even if this Court were not to find any individually reversible error, that the cumulative effect of all the errors at trial warrants reversal.  The Court addresses these issues now, before proceeding to Crawford's ineffective assistance of counsel argument to prove a point.

¶28.    This Court will not address alleged errors of counsel in their aggregate under some lesser standard than is normally required to prove ineffective assistance of counsel.  See *Foster v. State*, 687 So.2d 1124, 1141 (Miss. 1996).  Therefore, this Court will only address any errors in assistance of counsel under the proper standard in the remaining issues.

¶29.    Notwithstanding, Crawford has failed to show any errors, much less a number of errors that might be reversible in their aggregate and, as such, this claim is without merit.  See *Davis v. State*, 660 So.2d 1228, 1261 (Miss. 1995); *Wilburn v. State*, 608 So.2d 702, 705 (Miss. 1992) (holding that there must be error in some part for there to be aggregate reversible error).


**IX.** **Whether Crawford received ineffective assistance of counsel during the guilt phase of the trial**.


*a.*    *Cumulative effect*

¶30.    Again, Crawford has failed to show any errors, much less a number of errors that might be reversible in their aggregate and, as such, this claim is without merit.  See *Davis v. State*, 660 So.2d at 1261; *Wilburn v. State*, 608 So.2d at 705.


*b.*    *Failure to develop relationship with client*

12

¶31.	Crawford claims that counsel was deficient in not creating a trusting relationship with their client and, as a result, their client, Crawford, was prejudiced. Crawford, however, cites no authority for this proposition, save for a case outside of this jurisdiction where defense counsel showed so much dislike for his client that he, in effect, became a second prosecutor. See *Rickman v. Bell*, 131 F.3d 1150 (6th Cir. 1997). Crawford has not alleged such facts here and, therefore, has not made the necessary showing that counsel was deficient and this claim fails. See *Woodward*, 843 So. 2d at 7.

### c.	*Failure to secure adequate funds*

¶32.	Crawford alleges that counsel failed to secure adequate funds to engage in proper investigation, which resulted in an inability to obtain the F.B.I. report that has previously been discussed. However, Crawford fails to create a nexus between lack of funds and discovery of this report, as he was able to find it through the Freedom of Information Act on his own.

¶33.	Crawford also alleges that counsel failed to secure funds for expert assistance. However, Crawford did have experts testify at trial and has failed to include an affidavit from any expert which states what exculpatory testimony they would have provided were Crawford able to afford it.

¶34.	Crawford does cite authority for the proposition that the state should provide money, when necessary, for expert assistance for those who cannot afford it. However, he cites no authority for the proposition that any of his counsels' efforts in these regards have fallen below any kind of standard. Therefore, he has failed to meet his requirement of showing deficiency on counsels' part. *Id*.

### d.	*Failure to investigate*

13

¶35.    Under this general heading, Crawford makes a general assertion that "counsel failed to ensure that a proper investigation take place."  However, he states nothing more and does not allege what counsel did or failed to do in investigating.  Therefore, he is unable to show prejudice and his claim is without merit.  See *Woodward*, 843 So. 2d at 7.

¶36.    Under a sub-heading, Crawford claims that the insanity defense was ineffectively investigated and presented.  However, Crawford's main argument is the same argument towards securing funds, which was addressed above.[5]  This claim is without merit.

### e.    *Failure to litigate competency*

¶37.    Crawford next complains that counsel was deficient for not litigating Crawford's overall competency and, specifically, his competency while on medication.  In fact, Crawford appears to advocate that the lack of a hearing on competency is automatic grounds for a review of a prisoner's petition for post conviction relief using the Eighth Amendment  jurisprudence announced by the United States Supreme Court in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 35 (2002).  Though unwilling to expand *Atkins* to such an extent, we are certainly willing to agree, for the sake of argument, counsel was deficient for not litigating competency, notwithstanding the fact that Crawford had been found competent for trial in an

---

[5] Crawford also claims it was ineffective for counsel to have used one expert at trial and an expert with a conflicting view at sentencing.  This Court notes that it is not per se ineffective for counsel to use experts with differing opinions at different phases at trial.

unrelated matter some 11 months prior and that there had been no documented changes in his condition from that point to the trial now in question.

¶38.    However, this still only answers half of the question before us.  We are still to determine whether Crawford was prejudiced by counsels' deficient performance.  As stated above, the applicable standard is whether there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, meaning a "probability sufficient to undermine the confidence in the outcome." *Mohr v. State*, 584 So.2d 426, 430 (Miss. 1991).

¶39.    As Chief Justice Pittman recently wrote for the Court in *Simon v. State*:

> At this stage in the proceedings, this Court need merely consider whether (the prisoner in question's) petition, affidavits, and trial record render it sufficiently likely that he received ineffective assistance of counsel so that an evidentiary hearing should be held.  'Put otherwise, on the papers and record before us, can we say with confidence that at any evidentiary hearing (petitioner) will not be able to show that he has been denied effective assistance of counsel.

857 So.2d 668,683 (Miss. 2003) (citations omitted).

¶40.    Showing prejudice is where Crawford fails in this argument.  In support, Crawford offers three exhibits, labeled K, L, and F.  Exhibit K is an assortment of medical records requested by Crawford from the Northeast Mississippi Medical Center in Tupelo.  In his petition, Crawford uses this information to show that he suffered a seizure and was transported to the medical center for treatment and testing.

¶41.    Exhibit L is a signed affidavit from Lemly D. Hutt Jr., Ph. D.  Dr. Hutt is a clinical psychologist who had been treating Crawford for months prior to his unrelated 1993 trial and originally found Crawford competent for trial.  In his petition, Crawford alleges that Dr. Hutt,

15

after learning of the seizure and resulting medication, reversed his position and dounf Crawford incompetent for trial. It is Crawford's position that Exhibit K supports such a proposition. However, such is not the case.

¶42. Despite having not seen Crawford since his seizure at the time of the affidavit, Hutt relays information from defense counsel that due to the medication, Crawford appeared "groggy and drugged, is experiencing dizziness and is sometimes incoherent." In the remainder of the paragraph, Hutt notes that it was apparent that at that time, the treating physicians were attempting to determine the correct dosage of medication for Crawford. In the subsequent paragraph, Dr. Hutt states "[u]ntil I am given an opportunity to re-examine Mr. Crawford and review the results of the tests performed on him as a result of these seizures, I am unable to assess his competency to stand trial with certainty." The closest this document comes to stating that Crawford was incompetent was Dr. Hutt's statement that "I can say, based on these facts relayed to me that there is a probability that he is currently incompetent to stand trial."

¶43. This Court has already indirectly ruled on the weight that should be given to this affidavit. In the 1993 trial, Crawford's counsel raised the issue of his competency while medicated and used this affidavit along with one from Dr. Mark Webb. *See Crawford*, 787 So.2d at 1242. As this Court stated, "both expressed concerns regarding the effect of both Lithium and Dilantin on Crawford's competency to stand trial." *Id*. However, the State countered with the testimony of Dr. Reb McMichael, who stated that the levels of Lithium administered to Crawford was "barely... therapeutic or lower than therapeutic" and that the levels of Dilantin administered was 100 milligrams three times a day and that such was not expected to interfere with his ability to interact with his attorney. *Id*. This would have put

16

Crawford and counsel for this petition on notice as to the levels of Dilantin that Crawford may have been on, yet there is no affidavit provided in the petition as to the effects of such a dosage on Crawford.

¶44. The only evidence that Crawford provides as to his alleged incompetency is in Exhibit F. This exhibit is an affidavit from Crawford's father wherein he states:

> Additionally, throughout the trial of the instant matter my son was medicated such that it affected the way he appeared in the courtroom. On several occasions Charles was incoherent and unable to respond to simple questions. There were also several days when Charles sat with his head slumped down or his back to the jury.

¶45. Other than these three exhibits, Crawford offers this Court nothing more than allegations, arguments, and inapplicable case law. Counsel should have requested that the trial court take note of any changes in Crawford's situation since the previous trial and again rule on his competency based on such changes. Counsel was deficient for not having done so.

¶46. However, Crawford must also show prejudice and such is his burden to carry. See *Strickland*, 466 U.S. at 686. Thus, it is now Crawford's burden to show facts which would have changed since the original determination, or to provide an affidavit by a doctor who would have testified as to his incompetency, or perhaps to have simply found how much medication Crawford was on at the time and provided a medical opinion as to the effects of such a level of medication.

¶47. However, he has not done so. He has merely provided this Court with proof that he had a seizure and no medication, proof that one doctor was "doubtful" of his competency, and his father's assertions that his medication affected the way he presented himself at trial. Thus, Crawford has not carried his burden in regards to prejudice. Therefore, this claim fails.

17

*f.* *Failure to prepare pretrial motions*

*1.* *failure to challenge indictment*

¶48.  Crawford next alleges his counsel was ineffective for failing to challenge the indictment handed down by the grand jury in either of two ways.  First, he states counsel was ineffective because it failed to object that the indictment was invalid on its face.  However, the invalidity of Crawford's indictment was addressed on appeal and Crawford was found not to have been prejudiced by such.  *Crawford*, 716 So. 2d at 1050-51.  Therefore, in this proceeding, he will be unable to meet the prejudice prong of *Strickland*.  See *Woodward*, 843 So. 2d at 7.

¶49.  In addition, Crawford states that his counsel should have challenged the indictment because one of the members of the grand jury was related to a prosecution witness.  This Court has already held that absent statutory provision to the contrary, it is permissible for a member of the grand jury to be related to the victim, meaning that such relation, alone, is not grounds for disqualification.  *Southward v. State*, 293 So.2d 343, 344 (Miss. 1974).  Therefore, we fail to see how it would be any less permissible for one related to a witness to serve on a grand jury.

¶50.  In addition, in the same letter mentioned earlier, written around the time of trial, Crawford agreed with his counsel's decision not to challenge the indictment on such grounds as the prosecution would probably just go get another.  Therefore, Crawford will be unable to meet the necessary showing of deficiency of counsel.  See *Woodward*, 843 So. 2d at 7.

*2.* *failure to file suppression motion prior to trial*

18

¶51.  Crawford alleges that it was ineffective for counsel to not file a motion to suppress prior bad acts and convictions.  It must first be reiterated that counsel is given wide latitude in its choice and employment of strategies and defenses.  *Hiter v. State*, 660 So. 2d 961, 965 (Miss. 1995).  In addition, "when the defense is insanity, either general or partial, the door is thrown wide open for the admission of evidence of every act of the accused's life relevant to the issue of sanity and is admissible in evidence.  *McLeod v. State*, 317 So. 2d 389, 391 (Miss. 1975).

¶52.  In this case, the insanity defense was employed and, thus, the door was opened to a wealth of evidence.  Crawford has failed to show that any of the evidence that he gives general reference to would be inadmissible in such a context.  As such, he has failed to show that counsel was deficient and this issue is without merit.  See *Woodward*, 843 So. 2d at 7.

### 3. *failure to properly move to suppress confessions*

¶53.  Crawford alleges that counsel was ineffective because they did not file a written motion to suppress confession statements.  However, it is clear from the record that such a motion was made ore tenus, challenging Crawford's statements on such grounds as voluntariness.  Crawford fails to cite any cases that stand for the proposition that motions must be made in writing.  As such, he is unable to show deficiency on the part of counsel and this claim is without merit.  See *Id*.

### 4. *failure to request a bench trial*

¶54.  Crawford claims that counsel was inefficient for failing to request a bench trial.  However, Crawford has cited no authority for the proposition that it is ineffective assistance

19

for counsel not to request a bench trial. Furthermore, while there is a right guaranteed under the Sixth Amendment to a trial by jury, there is no right to a trial by bench.[6] As such, Crawford is unable to show deficiency of counsel and this claim is without merit. See *id*.

### 5. *failure to appeal denial to proceed ex parte*

¶55. Crawford alleges that counsel's failure to appeal the denial of his petition to proceed ex parte to secure funds rendered counsel's assistance ineffective. However, in this petition, Crawford identified the specific expert he wished to obtain and that expert appeared and testified at his trial. His need to proceed ex parte was rendered moot. Since the claim was moot, Crawford is unable to show any prejudice from the failure to appeal the petition and, thus, this claim is without merit. *Id*.

### 6. *Failure to pursue plea negotiations*

¶56. Crawford asserts that his counsel was ineffective for failure to pursue plea negotiations. However, Crawford provides no evidence that the prosecution even considered tendering a plea offer to him. Therefore, Crawford is unable to show any prejudice and, as such, this claim is without merit.

### g. *Failure to conduct adequate voir dire*

#### 1. *failure to secure adequate conditions*

---

[6] The closest Crawford could come to such an argument is that a defendant can waive a jury trial with the consent of the prosecution. See ***Bishop v. State***, 812 So. 2d 934, 945 (Miss. 2002). However, there is no absolute right to a bench trial.

¶57. Crawford alleges that counsel "failed to secure adequate voir dire conditions so that the jurors would provide the information necessary to the exercise of defense challenges." However, his arguments essentially boil down to an assertion that counsel was rendered ineffective because it was unable to secure individual sequestered voir dire and the jury became tainted through information concerning prior convictions.

¶58. However, Crawford has cited no authority that indicates that the failure to obtain individualized, sequestered voir dire renders counsel's assistance ineffective.[7] Since, Crawford can therefore not show counsel to be deficient for not obtaining such a method of voir dire, this claim is without merit. *Id*.

> 2. *failure to ask necessary questions and meaningfully use peremptory challenges*

¶59. Crawford's assertion that counsel failed to ask necessary questions or properly challenge jurors is likewise without merit. As Crawford fails to allege what questions should have been asked or provide case law supporting his contention, he fails to give this court a means by which to measure counsels' performance. Therefore, his claim is without merit.

> 3. *failure to prevent jurors from being improperly excused*

¶60. Crawford asserts that counsel was ineffective for failing to rehabilitate jurors who had stated that their opposition to the death penalty would either preclude them from being able to impose such punishment and/or would prevent them from rendering an impartial verdict.

---

[7] Crawford, himself, notes that counsel made a motion for individualized, sequestered voir dire. However, it is apparently Crawford's desire that counsel would have renewed such a motion in the hopes that the trial judge would have changed his mind.

21

However, it is not ineffective assistance for counsel to fail to attempt rehabilitation of jurors when those jurors make it unmistakeably clear that they could either not vote for the death penalty or that their attitude towards the death penalty would prevent them from making an impartial decision as to defendant's guilt. ***Smith v. Black***, 904 F.2d 950, 978-79 (5th Cir. 1990). In this case, voir dire showed the prospective jurors' clear and unequivocal denial of the ability to render the death penalty or to remain impartial in a death penalty case. Therefore, it was not ineffective assistance to fail to attempt to rehabilitate them.

### 4. *failure to conduct sufficient voir dire*

¶61. Crawford alleges counsel was ineffective in failing to have two jurors removed for cause. However, the record reflects that both jurors were removed from the case and both were removed for cause. This claim is without merit.

### 5. *Alienating jurors*

¶62. Crawford next alleges ineffective assistance through the alienation of jurors during voir dire. Crawford claims that counsel was rude and sarcastic. However, as his only support, Crawford provides a Texas case wherein the prosecutor made several inflammatory remarks and went so far as to ask the jury if he were making them angry. See ***Miller v. State***, 728 S.W.2d 133 (Tex. Ct. App. 1987). Since Crawford has failed to allege similar facts in this case, he has failed to show deficiency in counsel and, therefore, this claim is without merit. See ***Woodward***, 843 So. 2d at 7.

### 6. *Failure to conduct effective opening statement*

¶63.    Crawford first claims that counsel conceded guilt and, therefore, was ineffective in his opening statement. However, Crawford's version of the facts is incorrect. The record reflects that counsel conceded underlying facts, yet at all times argued that Crawford was not guilty by reason of insanity. This Court has recognized the strategic prudence of admitting underlying facts while denying guilt and found that such conduct does not constitute ineffective assistance of counsel. See *Evans v. State*, 725 So. 2d 613,¶ ¶ 706-07 441-48 (Miss. 1997); *Wiley v. State*, 517 So. 2d 1373, 1382 (Miss. 1987).

¶64.    In addition, Crawford claims that he was denied a fundamental right to present a portion of his own opening statement. However, Crawford never alleges that he would have done so if given the option. He simply states that this right was never explained to him.[8] As such, without even addressing the possible ineffective assistance issues, this portion of the claim is without merit.

   h.     *Failure to prevent evidence of prior bad acts*[9]

      1.     *failure to prevent hearing on admissibility*

¶65.    Crawford alleges that it was ineffective for counsel not to demand a pre-trial hearing on admissibility regarding prior bad acts. However, Crawford fails to cite any case which states that it is ineffective assistance for counsel to fail to insist on such a pre-trial hearing.

---

[8] The Court wishes to note the imprudence of one giving the opening statement at his own trial when he, himself, claims that he should have been adjudged incompetent and where he claims that he was so drugged as to not even be able to sit in court correctly.

[9] Crawford's general assertion that counsel was ineffective for failing to prevent comments regarding the prior record of the accused is too vague to warrant separate discussion, but is incorporated into the issues under this heading.

Thus, the Court is unable to find that counsel was deficient for such failure and this claim is without merit. See *Woodward*, 843 So. 2d at 7.

### 2. *failure to object to testimony regarding prior bad acts*

¶66. Crawford asserts ineffectiveness in failing to object to testimony concerning prior bad acts. The first part of this claim is that counsel failed to object to certain parts of testimony where Crawford alleges that F.B.I. agent Summerlin made inappropriate references to Crawford's prior trials. However, this claim is lacking in merit as a review of the record reflects that the word "trial" never came out of agent Summerlin's mouth at the points alleged by Crawford. Summerlin use the words "upcoming event," instead. This was not evidence of prior bad action as Crawford alleges.

¶67. Crawford also asserts that the prosecution elicited inadmissible prior bad act testimony from both Crawford's father and Dr. Russell, the defendant's expert. However, in each instance, the prosecution performed this questioning on the cross examination of a witness that the defendant was using to establish the insanity defense and, as such, prior bad act evidence became admissible for challenging this defense. See *McLeod v. State*, 317 So. 2d at 391. Because all of the above evidence was admissible, Crawford cannot show counsel was deficient and, thus, his claim is without merit. See *Woodward*, 843 So. 2d at 7.

### 3. *Failure to require proper DNA admissibility hearing*

24

¶68. Crawford alleges that counsel was ineffective for not requiring the trial court "to conduct an on the record hearing pursuant to the requirements enumerated in" ***Polk v. State***, 612 So. 2d 381 (Miss. 1992). However, it is apparent that counsel did make a motion in limine to prevent the introduction of DNA evidence and that the court denied the motion, but not before hearing arguments by both sides and taking ***Polk*** into consideration. Also, the court's denial of the motion was affirmed on direct appeal. Not only does Crawford fail to allege what counsel specifically should have done, but this Court found that the evidence was properly admitted. Because Crawford has failed to show deficient performance or prejudice, this claim is without merit. See ***Woodward***, 843 So. 2d at 7.

4. *Failure to object to expert testimony on hair*

¶69. Crawford asserts that counsels' refusal to cross examine the states' expert witness on hair was ineffective assistance. First, Crawford already admitted to being in the barn with the victim, which is all that Crawford has alleged that this testimony showed. As such, he can not show prejudice in this case. In addition, as we have stated above, it is not necessarily deficient for counsel, when employing an insanity defense, to stipulate to underlying facts. See ***McLeod v. State***, 317 So. 2d at 391. Crawford has not provided this Court with any case law that finds it per se ineffective to not cross examine and opposing party's expert witness. Because he can not show deficiency or prejudice, this claim is without merit. See ***Woodward***, 843 So. 2d at 7.

5. *Failure to secure independent experts*

25

¶70. Crawford claims ineffective assistance in that counsel failed to secure funds for an independent expert to analyze fingerprints because it is possible that this expert may have discovered exculpatory evidence. Essentially, Crawford is claiming that the outcome of trial might have been different. However, *Strickland* requires a showing that the verdict would have been different; and therefore, this claim is without merit. *Woodward*, 843 So. 2d at 7; see also *Brown v. State*, 798 So. 2d 481, 506 (Miss. 2001) (no ineffective assistance where petitioner does not make showing that verdict would have been different if expert were retained).

### 6. *Failure to object to inadmissible evidence and testimony*

¶71. Crawford asserts that counsel was ineffective for not objecting to three specific pieces of testimony which, he claims, were designed to and did inflame the jury. He first claims prejudice as a result of F.B.I. agent Jackson's statement that he had a daughter close in age to the victim. When read in context, however, the statement was no more than an indication of his desire to find the victim as soon as possible in hopes that she might still be alive. Failure to object here was certainly not deficient.

¶72. Next, Crawford asserts that counsel should have objected to two statements made by F.B.I. Agent Summerlin. One statement referred to Crawford's professed opinion that at one point, it seemed as if the victim was attempting to witness to him. Another statement, actually made by the prosecution asks "[a]nd that is when he killed her?" While these statements were certainly objectionable, Crawford provides no case law on point or sufficiently analogous to back up his assertions that the failure to object to these individual statements rendered

26

counsels' assistance ineffective. Indeed, the record reflects counsels' vigorous participation during the testimony of Agent Summerlin, making several objections.

¶73. In addition, it cannot be shown that Crawford was prejudiced by any of the above statements. Crawford has failed to show that there was a reasonable probability that the jury would have returned a different verdict had these statements been objected to and stricken from the record as this Court requires. See *Mohr*, 584 So.2d at 430. Because Crawford has failed to show deficiency or prejudice, this claim fails. See *Woodward*, 843 So. 2d at 7.

### I. *Injecting admissible, highly prejudicial evidence*

#### 1. *prior bad acts*

¶74. Crawford alleges ineffective assistance in the injection of prior bad acts into the case. In response to Crawford's assertion that the injection of prior bad acts during Dr. Russell's testimony and during voir dire, the Court reminds Crawford that his was an insanity defense. The discussion of such acts were necessary to Dr. Russell's testimony in order to try to show insanity. In regards to the issue of voir dire, the Court finds that counsel was prevented from injecting prior bad acts by the prosecution.[10] Notwithstanding, such acts would eventually have come out and we hold, strictly under the facts of this case, that Crawford was not prejudiced by this near slip-up.

---

[10] The following was recorded during voir dire:
Mr. Pannell: "[Y]ou said I believe you told us that your father served on a previous juror where Charles Crawford?"
Mr. Robinson: "You Honor."
The Court: "Just a minute,... before you respond."
Following this exchange, a bench conference was held without record, and counsel moved on to other matters without addressing the issue.

¶75. Crawford also cries foul over an exchange his counsel had with F.B.I. agent Jackson wherein he asks agent Jackson what facts Crawford was confronted with during his interrogation that linked him to the alleged crime. Jackson responded with a number of things, some of which were prior bad acts/crimes attributed to Crawford. While Crawford claims this as error, context shows that this was an intentional move by counsel to show involuntariness in the confession. Given the latitude given in regards to strategic moves, we cannot hold that counsel was deficient for eliciting this testimony. See *Woodward*, 843 So. 2d at 7. However, because we find that counsel either did not inject bad acts in some instances and was not deficient for doing so in others, Crawford has failed to meet his burden and this claim fails. *Id*.

## 2. *information about the first ransom note*

¶76. Crawford next claim rests on a line of questioning which elicited testimony concerning a first ransom note that was found at his parent's home. Crawford alleges that this not only was improper, but that it opened the door to further questioning concerning the note.

¶77. First, counsel's actions did not open the door in this case. We again repeat the rule that use of the insanity defense makes relevant and admissible, that evidence which could rebut such a defense. See *McLeod v. State*, 317 So. 2d at 391. As Crawford concedes in his petition, this evidence was relevant to the issue of insanity.

¶78. The important question here is whether calling the witness, itself, was so improper that it rendered counsels' assistance ineffective. We think not. It is clear from a reading of the record that counsel was attempting to attack Crawford's confession as illegally obtained. To do so, it was necessary for counsel to call the witness to the stand and show that certain

28

records were obtained under false pretenses. Crawford has provided this Court with no case law that would hold counsel ineffective for merely calling a witness. Because Crawford has failed to show counsel was deficient, his claim fails. See *Woodward*, 843 So. 2d at 7.

### 3. *Failure to ensure attendance of witnesses*

¶79. Crawford asserts that counsel was ineffective because of the failure to secure the attendance of witnesses at a pretrial hearing and at trial. However, in the only instance noted by Crawford, the record shows quite clearly the court's willingness to reopen the specific motion when the proper witnesses were in attendance and that the issue was indeed later addressed at trial by the necessary witnesses. This issue is without merit.

### 4. *Ineffective closing argument*

¶80. Crawford next claims that counsel's closing argument was so inadequate as to become ineffective. However, counsel's fourteen page closing sits well with this court given its purpose - to make one last effort to argue that Crawford was not guilty by reason of insanity. Counsel's aim was to portray Crawford as a "monster" in order for the jury to find him not guilty by reason of insanity. Crawford does not direct this Court's attention to any case law that stands for the proposition that counsel must describe his client in a pleasant manner at closing argument. This portion of the issue is without merit.

¶81. In addition, and despite Crawford's assertion, counsel never conceded guilt in this case, just underlying facts. However, counsel steadfastly maintained throughout trial that his client was not guilty due to insanity. This issue has already been addressed under a similar heading. Crawford has failed to show that counsel was deficient in his closing and, therefore, this portion of the claim also fails. See *Woodward*, 843 So. 2d at 7.

**X.** **Whether Crawford was denied effective assistance of counsel at sentencing**.

### 1. *Failing to request a continuance*

¶82. Crawford's assertion that counsel was ineffective for failing to secure a continuance is without merit. Not only did counsel request adjournment for the evening, but the judge granted the request and the penalty phase of trial did not begin until the following morning.

### 2. *Failing to object to improper presentation of evidence*

¶83. Crawford claims ineffective assistance in that counsel failed to object to the prosecution's use of the testimony of Officer James Wall to establish prior convictions. While Crawford does cite the "best evidence rule," he cites to no authority for the proposition that the prosecution is required to provide certified copies of convictions to prove aggravators at the sentencing phase of a capital murder case.

¶84. In addition, Crawford is unable to show any prejudice. Were this testimony objected to, the State could have used the same certified copies that were used and admitted into evidence at the hearing on Crawford's habitual offender status. Because he can show neither deficiency nor prejudice, Crawford's claim fails. See *Woodward*, 843 So. 2d at 7.

### 3. *Failure to litigate issue of victim impact evidence*

¶85. Crawford claims that counsel failed to litigate, in a meaningful manner, victim impact evidence presented by the victim's mother and grandmother and thus, was ineffective. However, the record reflects that an objection to this evidence was made and this issue was examined on appeal. There, the court found nothing improper about the victim impact evidence

that was presented at sentencing. Therefore, Crawford is unable to demonstrate deficient performance or prejudice and his claim fails. See *id*.

¶86. Crawford also argues that the identification of two of Crawford's previous victims was error and the failure to litigate ineffective assistance. However, Crawford fails to cite a single authority in support of this proposition and it is thus without merit.

### 4. *Failure to deal with juror speculation regarding parole*

¶87. Crawford next claims that he was prejudiced by counsels' ineffectiveness in dealing with juror speculation regarding Crawford's parole eligibility. However, Crawford fails to make any showing that any of the jurors were confused on this topic. In addition, while Crawford claims his counsel only mentioned that there was no possibility of parole if given a life sentence three times, it was mentioned at court, regardless of speaker, around nineteen times. This claim is without merit.

### 5. *Failure to develop and present a theme in mitigation*

¶88. Here, Crawford complains that his counsel failed to come together and create one common theme in mitigation. He laments that one lawyer dealt with the impropriety of the death penalty itself, while the other concentrated on the insanity defense and other related arguments. However, as Crawford has failed to provide this Court with any case law that has accepted the same or a sufficiently analogous argument, his claim is without merit.

### 6. *Failure to conduct a professional and effective investigation*

¶89.	Crawford next contends that counsel failed to conduct a professional and effective investigation for the penalty phase of trial. However, Crawford's argument concerns the alleged failure to investigate mitigating evidence, which will be addressed in the following issue.

*a.	Failure to present and investigate
significant mitigation evidence*

¶90.	The United States Supreme Court has very recently discussed this exact issue. See **Wiggins v. Smith**, 123 S.Ct 2527, 156 L.Ed.2d 471 (2003). In **Wiggins**, the petitioner claimed that he received ineffective assistance because counsel failed to investigate and present mitigating evidence at his sentencing.[11] **Id**. at 2535. Counsel rebutted the assertion by claiming that they did conduct a limited investigation, which reflected a strategic decision not to present mitigating evidence at the sentencing hearing, but to attempt to implement an alternate strategy instead. **Id**.

¶91.	In a 7-2 decision, finding ineffective assistance in the investigation, the Court clarified the manner in which such claims are to be reviewed. **Id**. at 2531. Quoting **Strickland**, the Court reiterated that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." **Id**. at 2535. Therefore, since counsel is under a general duty to reasonably investigate, a court should not simply concentrate its analysis on the decision not

---

[11] Wiggins was convicted of murder and sentenced to death, just like the case at bar.

to present evidence, but instead, should "focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence ... *was itself reasonable*." *Id*. at 2536.

¶92.   Thus, a court is to determine whether counsel exercised reasonable professional judgment in conducting its investigation based on an assessment of the prevailing professional norms, including a "context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Id*.  We accept this instruction and stand ready to analyze this issue under the guidelines announced above.

¶93.   In the case at bar, Crawford claims that counsel was ineffective for failing to investigate and present mitigating evidence surrounding the following: (1) emotional illnesses and mental disturbances, (2) sexual and physical abuse, (3) adaptation to prison conditions, (4) remorse, and (5) long-term substance abuse.   However, Crawford has failed to even allege any information outside of the knowledge of counsel, much less provide the necessary affidavits of such.   With such a glaring lack of evidence by which to determine if Crawford was prejudiced, there is no need to even examine the reasonableness of counsels' investigation.

¶94.   The lack of new evidence also impacts Crawford's claim that counsel was ineffective in their presentation of evidence during the penalty phase of trial.  Because Crawford is unable to challenge the investigation, we are left with no alternative but to treat it as complete and judge counsels' decisions regarding the presentation of evidence as if they had been made according to a complete investigation and, thus, give great deference to any claims of trial strategy. *Woodward*, 843 So. 2d at 7.

¶95.   As this Court held in *Holly v. State*, 716 So.2d 979, 990-91 (Miss. 1998), where petitioner has given this Court such a sketchy outline of the investigation performed by

33

counsel without any way of knowing counsels' impressions or the reasons behind counsels' decisions, we are left with the presumption that counsel had this evidence, reviewed this evidence, and considered it, as a matter of strategy, that it was in his client's best interest not to bring it out. Notwithstanding, we do not find that the evidence mentioned, even if it all had been presented at sentencing was of a nature, in its entirety, to cast any doubt as to the propriety of the jury's verdict and, as a result, this claim fails. See *Woodward*, 843 So. 2d at 7.

> b. *Failure to present effective closing argument*

¶96. Crawford uses this sub-issue to state his displeasure with one member of counsel's closing argument. He objects to counsel's argument that the jury should not give the death penalty because that is exactly what Crawford wanted. Instead, Crawford claims that counsel should have presented mitigating evidence before the jury and should have made a strong argument for life.

¶97. The record is clear in this case that mitigating evidence was presented through the testimony of family members and expert testimony of Dr. Webb. In addition, the record is equally clear that the other member of counsel gave a strong argument in favor of life. Therefore, this issue is basically a heading under which Crawford is simply expressing his displeasure with one member of counsel's argument strategy. Crawford's opinion, however, is not a sufficient basis for a claim of ineffective assistance. This claim is without merit.

> c. *Failure to object to State's improper argument*

34

¶98. Crawford's final assertion is that counsel failed to take steps to ensure that the prosecution did not violate his rights during their closing argument. He first complains that the state instructed the jury not to consider the mitigating circumstances of Crawford's alleged lack of capacity. However, upon reading the statements provided by Crawford, it is clear that the prosecution was merely rebutting the assertion that Crawford lacked capacity. Attempting to disprove a mitigating factor is not the same as instructing the jury not to consider one. See *Ladner v. State*, 584 So. 2d 743, 762 (Miss. 1991).

¶99. Crawford's contention that the prosecution presented evidence that was not in the record is also misguided. The evidence complained of, a first ransom note, was received into evidence at the end of his mother's testimony and the fact that he wrote it is a reasonable inference given her testimony. In addition, we find that even were this evidence erroneously admitted and counsel deficient for not contesting it, the necessary level of prejudice could not be found. *Woodward*, 843 So. 2d at 7.

¶100. Crawford's contention that the prosecution instructed the jury to consider premeditation as a factor is without merit. No such "instruction" can be inferred from the quote offered by Crawford. The most that can be inferred is that the prosecution was attempting to rebut mitigation evidence that Crawford could not appreciate his actions because he was suffering from extreme emotional disturbances.

¶101. Finally, contrary to Crawford's assertion, the prosecution did not improperly attempt to place the jury in the victim's shoes. Much like in the case of *Davis v. State*, 684 So.2d 643, 655-56 (Miss. 1996), he requested that the jury imagine the last moments of the victim's life

35

and what she must have thought. Because Crawford is incorrect as to the underlying assertion in regards to each of the above claims, they are without merit.

## CONCLUSION

¶102. Crawford has neither shown counsel deficient under any of above issues, nor has he shown prejudice due to any of the alleged errors. In addition, he failed to show that the F.B.I. report at issue would have even a significant effect on his trial, much less the type of effect necessary for success in this petition. The remaining issues presented were all procedurally barred from consideration. Therefore, we deny all of Crawford's applications.

¶103. **APPLICATIONS FOR LEAVE TO SEEK POST-CONVICTION RELIEF DENIED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB, EASLEY AND GRAVES, JJ., CONCUR. CARLSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**