584 So.2d 426 (1991)
Randy (Randi) MOHR
v.
STATE of Mississippi.
No. 07-KA-59467.
Supreme Court of Mississippi.
August 7, 1991.
*427 William A. Pate, Dale Robinson, Gulfport, for appellant.
Jack B. Lacy, Jr., Sp. Asst. Atty. Gen., Mike C. Moore, Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
HAWKINS, Presiding Justice, for the Court:
Randi Mohr was convicted in the Pike County Circuit Court on two counts of child fondling and sentenced to two ten-year terms to run concurrently in the custody of the Mississippi Department of Corrections. Mohr appeals his conviction, raising four assignments of error:
1. the trial court erred in admitting his confession into evidence;
2. he received ineffective assistance of counsel at trial;
3. the trial court erred in allowing a seven year old girl to testify; and
4. the verdict was against the overwhelming weight of the evidence.
Finding no merit in these assignments of error, we affirm.
We need not detail all the trial evidence, but will only relate the facts relevant to the issues on appeal.

I. ADMISSIBILITY OF MOHR'S CONFESSION
At trial the defense made a motion to suppress Mohr's confession. The circuit judge then conducted a suppression hearing outside the presence of the jury, at which only Deputy Sheriff Ken Foil testified.
Foil testified that he arrested Mohr at his home for child fondling on Monday afternoon *428 and took him to the Pike County Sheriff's Department. When there, Foil asked questions to determine if Mohr understood his rights, then read Mohr his Miranda rights, and asked him to sign the notification of rights form. Foil testified Mohr understood his rights and signed the form. Foil then read the waiver of rights form to Mohr. Mohr did not sign this form, however, saying he would not sign anything until he talked to Larry Ray, his mental health counselor.
Foil stopped questioning Mohr, called Ray, and told Ray that Mohr was under arrest for child fondling and that Mohr wished to speak to him. Foil remained in the room while Mohr spoke to Ray. Foil heard Mohr tell Ray that he was in jail and under arrest for playing with two girls at the Bogue Chitto Water Park and that he guessed he did it because he had been drinking.
After Mohr hung up, Foil explained to Mohr that they needed to talk and again read Mohr the Waiver of Rights form. Mohr then signed the waiver and gave a complete statement. Foil wrote the statement down as Mohr spoke. The statement reads as follows:
On Friday night November 20, 1987 I began drinking and then the next day on Saturday several of us went out to some private property besides Bogue Chitto Water Park so some friends could hunt for deer and picnic that day. Later on that afternoon my friends said they were going back hunting and the mother of these two girls said they were going back home and I would bring them home. After they had left the two girls wanted me to piggie back ride them. My pants kept falling down and it was all their fault. The two girls took their clothes off and it made me get on a hard and so I guess I had [been] drinking too much. I touched both of them between their legs but did not put my finger or penis in them.
After Mohr gave the statement, Mohr refused to sign the written statement and for the first time asked for an attorney. Foil testified that he stopped questioning Mohr when he asked for an attorney.
Following the suppression hearing, the court ruled that the confession was admissible, that Mohr had freely and voluntarily given the confession and that Mohr's Fifth Amendment right against self incrimination and Sixth Amendment right to counsel had not been violated. The State then offered Mohr's confession into evidence before the jury.
In testifying in his own defense before the jury, Mohr denied fondling the young girls and testified that he did not give Foil a confession, alleging that Foil made up the statement. He said Foil threatened him and was abusive, and that he asked for an attorney before he asked to speak to his mental health counselor. He said that he only asked to speak to Ray after Foil told him that his attorney was not home. As above noted, however, none of Mohr's testimony was offered at the suppression hearing.
Mohr argues that his Fifth and Sixth Amendment rights were violated in admitting the confession.
Mohr first argues that his refusal to sign the waiver of rights form coupled with his statement that he would not sign anything until he talked to his mental health counselor were clear and unequivocal evidence of his intent not to relinquish his Fifth and Sixth Amendment rights, and that they were violated. Mohr correctly points out that once an accused exercises his right to remain silent, the police must honor it and terminate questioning, allow a significant time to pass before questioning him again, advise him of his rights again, and then only question him about a crime that was not the subject of the previous interrogation. Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). In addition, Mohr cites U.S. v. Cherry, 733 F.2d 1124 (5th Cir.1984), for the proposition that once an accused makes even an equivocal request for counsel, the police can only question him to clarify his request.
Mohr argues that the record does not support a waiver of his right to remain silent at any time subsequent to his refusal *429 to sign the waiver of rights form, reminding us of the State's heavy burden of proof when there had been no written waiver. North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); McDonald v. Lucas, 677 F.2d 518 (5th Cir.1982).
We are not persuaded. Mohr's Fifth and Sixth Amendment rights were not violated. The Mosley guidelines, which restrict questioning after the accused has exercised his right to remain silent, do not apply here because Mohr did not exercise his right to remain silent. Mohr's refusal to sign the waiver of rights form was not a per se invocation of his Fifth Amendment rights. United States v. McDaniel, 463 F.2d 129 (5th Cir.1972), cert. denied, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973); United States v. Sawyer, 504 F.2d 878 (5th Cir.1974); United States v. Devall, 462 F.2d 137 (5th Cir.1972); McDonald, 677 F.2d at 520. Mohr's request for a mental counselor was not a per se invocation of his Fifth Amendment rights. A request for an attorney invokes the defendant's Fifth Amendment rights, but a request for someone other than an attorney does not. Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). In Fare, where the defendant asked for his probation officer, the Supreme Court stated:
The per se aspect of Miranda was thus based on the unique role that a lawyer plays in the adversary system of criminal justice in this country... .
A probation officer is not in the same posture with regard to either the accused or the system of justice as a whole. Often he is not trained in the law, and so is not in a a position to advise the accused as to his legal rights. Neither is he a trained advocate, skilled in the representation of the interests of his client before both police and courts. He does not assume the power to act on behalf of his client by virtue of his status as adviser, nor are the communications of the accused to the probation officer shielded by the lawyer-client privilege.
.....
We thus believe it is clear that the probation officer is not in a position to offer the type of legal assistance necessary to protect the Fifth Amendment rights of an accused undergoing custodial interrogation that a lawyer can offer... . A probation officer simply is not necessary, in the way an attorney is, for the protection of the legal rights of the accused ...
Fare, 442 U.S. at 719, 722, 99 S.Ct. at 2569, 2570, 61 L.Ed.2d at 209, 210-211. The same reasoning applies in the instant case. A mental health counselor is not qualified to protect the defendant's Fifth Amendment rights.
Nor were Mohr's request to speak to his mental health counselor and his temporary refusal to sign the waiver form requests for counsel. Fare, 442 U.S. at 719, 722, 99 S.Ct. at 2569, 2570, 61 L.Ed.2d at 209, 210-211. Mohr's temporary refusal to sign the waiver form was not a request for counsel. Cherry is distinguishable. There, Cherry told the police, "Maybe I should talk to an attorney before I make a further statement.," and also asked, "Why should I not get an attorney?" Cherry, 733 F.2d at 1130. Cherry's request for counsel was not ambiguous. Moreover, Foil did honor Mohr's wishes. Foil stopped questioning Mohr when he asked to call his mental health counselor. Foil allowed Mohr to talk to Ray. Foil then went back over Mohr's rights and the waiver of rights form before asking him to sign the waiver. Only then did Mohr sign the waiver and give a statement.
None of Mohr's actions or words up to the point when he refused to sign the statement indicate a desire to invoke his right to remain silent or be represented by counsel. Foil gave Mohr ample opportunity to exercise his rights to remain silent and to obtain an attorney. The court properly held that under the totality of the circumstances test Mohr was advised of his right to remain silent and his right to counsel, that Mohr understood his rights and made a knowing and informed waiver of his rights.

*430 II. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM
Mohr argues that his trial counsel rendered ineffective assistance because he did not put Mohr on the witness stand during the suppression hearing. The defense points out that there were contradictions in Mohr's and Officer Foil's testimony and that the judge, having only heard Officer Foil's testimony, could not have properly determined that Mohr knowingly and intelligently waived his rights.
When faced with a claim of ineffective assistance of counsel, this Court follows the Strickland test. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Leatherwood v. State, 539 So.2d 1378 (Miss. 1989); Cabello v. State, 524 So.2d 313 (Miss. 1988); Byrd v. State, 522 So.2d 756 (Miss. 1988); Merritt v. State, 517 So.2d 517 (Miss. 1988); Wiley v. State, 517 So.2d 1373 (Miss. 1987); King v. State, 503 So.2d 271 (Miss. 1987); Evans v. State, 485 So.2d 276 (Miss. 1986). This test is two-pronged. Under the first prong, the movant "must show that the counsel's performance was deficient and that the deficient performance prejudiced the defense." Here, there is a strong presumption of competence. Under the second prong of the test, the movant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." The defendant must prove both prongs of the test. Handley v. State, 574 So.2d 671 (Miss. 1990), citing Cabello v. State, 524 So.2d 313, 315 (Miss. 1988).
This Court gives much deference to an attorney's trial tactics. As this Court has stated:
Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134 [102 S.Ct. 1558, 1574-75, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.
Lambert v. State, 462 So.2d 308, 316 (Miss. 1984), citing Strickland, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. The right to effective counsel does not entitle the defendant to have an attorney who makes no mistakes at trial. The defendant just has a right to have competent counsel.
There is nothing in the record that explains why Mohr's counsel did not put Mohr on the stand during the suppression hearing. His decision to keep Mohr off the stand during the suppression hearing may have been a deliberate trial strategy. The State suggests trial counsel may not have wanted to subject Mohr to cross examination at that stage of the trial. Also, he may have thought he had a strong case for suppression of the confession and that his cross examination of Foil would convince the court to suppress the confession. This Court cannot second guess Mohr's attorney. Even if Mohr's attorney did make a mistake, it certainly does not rise to level of ineffective assistance of counsel necessary to violate the Sixth Amendment right to counsel. There is a strong presumption that the attorney's performance was within the wide range of reasonable, professional, and acceptable conduct. Leatherwood v. State, 473 So.2d 964 at 968. (Miss. 1985).
Finding that Mohr's attorney's performance was not deficient, we do not address the second prong of Strickland.

III. COMPETENCY OF THE CHILD WITNESS
Mohr next challenges allowing a seven-year-old girl victim to testify. He argues that the child was confused as to what the truth was and that she did not know the consequences or the importance of telling the truth.
*431 Mississippi courts generally allow children of tender years to testify if competent. Rule 601 of the Mississippi Rules of evidence provides that every person is competent to be a witness unless they are incompetent or otherwise restricted. It is in the sound discretion of the trial judge to determine the competency of a child witness. Before allowing the child to testify, the judge should determine "that the child has the ability to perceive and remember events, to understand and answer questions intelligently and to comprehend and accept the importance of truthfulness." House v. State, 445 So.2d 815, 827 (Miss. 1984).
After studying the young girl's testimony, it is clear that the child was a competent witness. Her testimony was consistent throughout the trial. It was consistent with the testimony of the other seven-year-old child that Mohr allegedly molested. The child knew what the truth was and knew the importance and the consequences of telling the truth. The child proved that she was intelligent, had the ability to understand and answer questions, could remember events, and knew the importance of truthfulness. From the record it is clear that no one put her up to accusing Mohr and that she was not fabricating the incident. No error was committed in permitting this child to testify.

IV. WEIGHT OF THE EVIDENCE
Finally, Mohr argues that if the confession and the seven-year-old girl's testimony had not been before the jury that a reasonable juror, considering the rest of the evidence in the light most favorable to the verdict, could not have found beyond a reasonable doubt that Mohr was guilty of child fondling. Dickerson v. State, 441 So.2d 536 (Miss. 1983). He asserts that the verdict was against the overwhelming weight of the evidence and for this reason, the court should set aside the verdict.
Because we find no merit to Mohr's argument that the confession and one child victim's testimony were inadmissible, there is no need need to address this assignment. We note, however, that even without this evidence there was sufficient credible evidence for a reasonable jury to convict Mohr.
The testimony of the other seven-year-old girl that Mohr allegedly fondled was damning. The mother of one of the young girls (hereinafter the mother) and the father of the other young girl (hereinafter the father) both testified that they had talked to Mohr. The mother testified that Mohr stopped by the house to talk to her sometime after 6:30 p.m. on the day of the picnic and that when she asked him about what happened at the picnic, he said that he was riding the girls piggyback and that the girls were sliding down his back and pulling his pants down and that he could not stop them. Mohr told the mother that he had a problem and that he had been getting help and asked if anyone else knew about what happened at the park and what they were going to do about it. The father testified that Mohr called him the day after the incident at the park to apologize for his actions. The father testified that Mohr said he was sorry about what happened the day before and said he hoped they could still be friends. The father said he told Mohr that there was little chance of them ever being friends. In response, Mohr told the father that he was going to mental health and that he would work something out. Also, while on the phone with Ray, Mohr said that he was arrested for playing with two girls and he guessed he did it because he had been drinking.
The jury is the sole judge of the weight of the evidence and the credibility of the witnesses. Dixon v. State, 519 So.2d 1226, 1228 (Miss. 1988); Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983); Marr v. State, 248 Miss. 281, 159 So.2d 167 (1963). Finding no error, we affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., and DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.