**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2000-DR-01078-SCT**

*WILLIE JEROME MANNING*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT:                    7/30/1996
TRIAL JUDGE:                         HON. JOHN M. MONTGOMERY
COURT FROM WHICH APPEALED:           OKTIBBEHA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:              OFFICE OF CAPITAL POST CONVICTION
                                     COUNSEL
                                     BY: DAVID VOISIN
                                         ROBERT RYAN
ATTORNEY FOR APPELLEE:               OFFICE OF THE ATTORNEY GENERAL
                                     BY: MARVIN L.WHITE, JR.
NATURE OF THE CASE:                  CIVIL - DEATH PENALTY- POST-
                                     CONVICTION
DISPOSITION:                         APPLICATION FOR LEAVE TO SEEK POST-
                                     CONVICTION RELIEF GRANTED IN PART
                                     AND DENIED IN PART- 05/06/2004
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     In 1994, in the Circuit Court of Oktibbeha County, Willie Jerome Manning was convicted of the

capital murder of Alberta Jordan and Emmoline Jimmerson who were killed during the commission of a

robbery. On July 25, 1996, Manning was sentenced to death in each case. On March 31, 1999, this Court

affirmed Manning's convictions and sentences on all grounds except a ***Batson*** issue. That issue was

remanded to the circuit court and the circuit judge found valid race-neutral reasons for the State's two peremptory strikes. See *Manning v. State*, 735 So.2d 323 (Miss. 1999). On June 29, 2000, this Court affirmed the circuit court's judgment on the ***Batson*** issue. See ***Manning v. State***, 765 So.2d 516 (Miss. 2000) The motion for rehearing was denied on September 7, 2000, and the United States Supreme Court denied Manning's petition for writ of certiorari on March 5, 2001. ***Manning v. Mississippi***, 532 U.S. 907, 121 S.Ct. 1233, 149 L.Ed.2d 142 (2001).

¶2.     After denial of the petition for writ of certiorari, this Court, in accordance with ***Jackson v. State***, 732 So.2d 187 (Miss.1999), remanded the matter to the Circuit Court of Oktibbeha County for appointment of post-conviction counsel. The Office of Capital Post Conviction Counsel (OCPCC) was ordered to inform the trial court of who it had selected as counsel for Manning, on or before December 15, 2000. Following prolonged disputes regarding Manning's appointed representation, David Voisin, with the OCPCC, filed the application for leave to proceed in the trial court with post-conviction pleadings on January 23, 2002.

## FACTUAL BACKGROUND

¶3.     On the evening of January 18, 1993, Emmoline Jimmerson and Alberta Jordan were found dead in their Brooksville Gardens apartment. Police found no signs of forced entry, and the apartment was not ransacked. Both women had been beaten about the head, and their throats were slashed. In the investigation of the murders, police interviewed many of the residents of Brooksville Gardens. Certain residents told the police that they had seen someone running up the hill behind the victims' apartment, and another resident said that she saw as many as three men enter the victims' apartment and later saw them running up the hill and climbing into a car. One of those men was identified as Joe Arthur "Jo Jo" Robinson, a neighbor of the victims. Several other residents told police that they suspected that Jo Jo was somehow

2

involved.

¶4. Over a year later, Herbert Ashford and Kevin Lucious (both serving time or facing charges) were approached by the police and made statements implicating Willie Jerome Manning in the murders of the two elderly women. At this time, Manning was already a suspect in another murder case involving two Mississippi State University students (See *Manning v. State* No. 2001-DR-00230). At trial the State called Ashford, Lucious, and Larry Harris. All three testified to having seen Manning in Brooksville Gardens near the time of the murders.

## ANALYSIS

¶5. In his Petition for Post-Conviction Relief, Manning raises sixteen claims which we have combined into fifteen for clarity. Manning raises a number of separate claims of ineffective assistance by his trial and appellate counsel. He also includes ineffective assistance claims in many of his claims that the State knowingly presented false testimony and/or created a false impression of the evidence, and failed to disclose materials that Manning characterizes as exculpatory. In his charges against the State, Manning alternatively asserts that his trial counsel was ineffective for failing to properly investigate the facts surrounding testimony of certain witnesses, failing to discover certain materials and documents in possession of the police department, failing to discover and interview witnesses, and failing to obtain and adequately use impeachment evidence.

**A. The State knowingly presented false and perjured testimony from Kevin Lucious identifying Petitioner as forcing his way into the victims' apartment.**

¶6. Manning argues that Kevin Lucious's testimony was false and that the State knowingly presented false evidence. Lucious stated that from the apartment he shared with his girlfriend, which is across the street from the apartment then occupied by the victims, he saw Manning force his way into the victims'

3

apartment. However, Lucious did not live in the apartment across the street from the victims at the time they were murdered. According to Likeesha Jones Harris's affidavit, she and Lucious moved into apartment 11E *after* the homicides. Manning also provided the affidavit of Teresa Bush, which states that Lucious and Likeesha Jones did not live in Brooksville Gardens at the time of the murders.

¶7. Furthermore, Manning asserts that the State knew that Lucious did not live in Brooksville Gardens at the time of the crimes. Oktibbeha County Sheriff Dolph Bryan was informed by Likeesha's grandmother that Likeesha and Lucious were not living in apartment 11E at the time and a police officer's notes from the days following the murders indicate that apartment 11E was vacant at the time.[1]

¶8. Manning asserts that the U.S. Supreme Court has held that a State's knowing use of or its failure to correct false testimony or its presentation of evidence which creates a materially false impression of the evidence violates a defendant's right to due process. *See* ***Miller v. Pate***, 386 U.S. 1, 87 S. Ct. 785, 17 L. Ed. 2d 690 (1967); ***Napue v. Illinois***, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959); ***Alcorta v. Texas***, 355 U.S. 28, 78 S. Ct. 103, 2 L.Ed. 2d 9 (1957); ***Mooney v. Holohan***, 294 U.S.103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). Manning argues that he is entitled to a new trial.

¶9. The State's response is that this issue, as well as all of Manning's non-ineffective assistance claims, are procedurally barred from collateral review by the doctrine of waiver pursuant to Miss. Code Ann. § 99-39-21(1) because such claims could have been raised on direct appeal and that Manning fails to demonstrate cause or actual prejudice for not raising the claim. The State asserts that Manning had a meaningful opportunity to raise these objections, defenses, claims, questions, issues, or errors at trial and/or

---

[1] Harris also states that she contacted Manning's trial counsel on more than one occasion, after the culpability phase and before the sentencing phase, explaining that Kevin Lucious's testimony was false.

4

on direct appeal but failed to do so.

¶10.     We find that the State offers nothing in support of this position.  There is no assertion that Manning or his attorneys were aware of any of these issues. The State cites *Brown v. State*, 798 So.2d 481 (Miss. 2001), where this Court held that in a death penalty case claims made in post-conviction collateral review were procedurally barred by the doctrine of  waiver because the petitioner either failed to object at trial or raise the issue on direct appeal.  We find that case distinguishable where Brown took issue with evidence that was known at the time of his trial. On Brown's claim that the State coerced false testimony from a witness, this Court noted, "[t]he record reflects that the defense was fully aware of the existence of all of Coleman Jones' statements and their inconsistencies."*Id.* at 491.  Brown's claims of improper argument by the prosecution, testimony of prior bad acts and the prosecution's improperly attesting to the veracity of its witnesses during closing argument, are all claims that were known to Brown at the time of his trial and/or direct appeal.  Those claims were properly refused as procedurally barred because they could all have been resolved on the face of the record.

¶11.     As  to Manning's claims of false testimony by  Kevin Lucious, included in his petition for post-conviction relief is the affidavit of Richard Burdine, Manning's trial counsel. Burdine attests that he never saw, nor knew of the existence of materials that were in the possession of the Starkville Police Department. Included in these materials were  handwritten notes by police officers who conducted a door-to-door canvas of the Brooksville Garden apartments that indicated that apartment 11E was vacant at the time of the murders, corroborating the affidavits of Harris,  Lucious's girlfriend, and of Mildred Jones, Harris's grandmother, attesting that Harris and Lucious did not live in Brooksville Gardens at the time of the murders.

¶12.     Manning supports his pleadings with affidavits and records regarding the inability to have these

grounds heard on the merits at trial or direct appeal and asserts that where a petitioner shows cause and actual prejudice, this Court may grant relief from the waiver. *See* Miss. Code Ann. § 99-39-21(1). Furthermore, errors affecting fundamental constitutional rights may be excepted from procedural bars. *See Luckett v. State*, 582 So.2d 428, 430 (Miss. 1991). We find that Manning has alleged such facts that demonstrate his claims are not procedurally barred, and we will grant his petition to seek post-conviction relief as to this issue.

### B. The State coerced Kevin Lucious into providing false testimony.

¶13.    Manning presents an affidavit of Kevin Lucious in which he recants his testimony that he saw Manning enter the victims' apartment and that he heard Manning talk about the murders. Lucious now testifies that Sheriff Bryan and David Lindley of the Starkville Police Department came to Lucious while he was incarcerated in St. Louis County, Missouri, and threatened him with prosecution in Mississippi for those murders if he did not sign the statement. Manning incorporates by reference the discussion in part A above and asserts that the State presented false testimony or at least coerced a witness into providing false evidence. Given the importance of Lucious's testimony and the fact that there are indications that the testimony was false, Manning argues that he is entitled to a new trial.

¶14.    We now find that Manning should be allowed to seek post-conviction relief pleadings as to Kevin Lucious's testimony. Lucious claims that he was coerced into testifying against Manning with the threat that he might be charged with the murders. When an important witness to a crime recanted his testimony and offered a reason for having given false testimony at trial, the defendant/petitioner is entitled to an evidentiary hearing to determine whether the witness lied at trial or on his affidavit. *See Hardiman v. State*, 789 So.2d 814 (Miss. Ct. App. 2001).

### C. The State knowingly presented false testimony of Herbert Ashford.

¶15. At trial, Herbert Ashford testified that he saw Manning the day the victims were killed. Ashford testified that he was living in Building 8 in the Brooksville Gardens. He also testified that two weeks after the murders, he overheard a conversation between Willie Manning, Kevin Lucious, and Marshon Manning, Willie's brother, in which Willie Manning allegedly said that "he should have did more than he did to the ladies."

¶16. In his petition for post-conviction relief, Manning presents the affidavit of Kevin Lucious, who now denies ever having a conversation with Manning about harming the murder victims and the affidavit of Marshon Manning who denies that his brother ever discussed the murders with him. Manning also includes the affidavit of Teresa Bush, Herbert Ashford's girlfriend, with whom Ashford lived at the time. Bush states that she had known Manning for eight years and that she did not see him at Brooksville Gardens on the day of the crime.

¶17. We find no allegation that Teresa Bush or Marshon Manning were unavailable during the trial, nor any allegation or evidence that defense counsel was unable to interview either witness. Furthermore, we find nothing from Ashford, himself, recanting his testimony. This issue is not fully supported by Manning, and there is no supporting evidence to suggest that this issue could not have been raised on direct appeal. Therefore, we find that this claim is procedurally barred.

### D. Petitioner was denied constitutional rights by the State's knowing presentation of false evidence concerning threats made to and deals made with Kevin Lucious.

¶18. Manning argues that Lucious received substantial benefit from testifying against Manning and that the State's threat to prosecute Lucious if he did not testify against Manning was never disclosed even though defense counsel attempted to cross-examine Lucious about negotiations and deals with the State. In his affidavit, Lucious states that he testified against Manning only because he was afraid of being charged with

7

the murders. He asserts that the District Attorney convinced him that he would be charged with the murders if he did not sign the statements. Lucious also states that the statements purported by the State to be his own, were already prepared and were presented to him by Sheriff Dolph Bryan on the Sheriff's second visit to see Lucious in the St. Louis, Missouri, county jail.

¶19. Manning asserts that had the jury known that Lucious was testifying solely to avoid prosecution that fact would have had a substantial impact on the outcome of his trial. Manning also asserts that at trial Lucious denied that he had been offered a "deal" in exchange for his testimony, and that the State failed to correct the false impression that Lucious gave the incriminating statements of his own volition.

¶20. Manning fails to demonstrate any benefits that Lucious received in Missouri, where he was incarcerated, in exchange for his testimony in Mississippi. We find that it is not enough to speculate that Lucious received the "substantial benefit of not having to face double murder charges and the death penalty in Mississippi," where there is no indication, save his own fear of it, that Lucious would have been charged with the crime. This issue is without merit.

> **E. Petitioner was denied constitutional rights by the State's knowing presentation of false evidence or failure to correct a false impression of the evidence regarding a shoe print found in the victims' apartment; In the alternative, Petitioner's constitutional rights were violated by the suppression of exculpatory information concerning the shoe print.**

¶21. Manning asserts that according to Stanley Sisk, a crime scene specialist who investigated the crime, a shoe print in blood was found on a rug in the victims' apartment. When questioned about the shoe print, Sisk testified that the print was insufficient for comparison purposes. What he failed to mention is that although the print could not be used for comparison, the examiner was able to measure the print and found that it was a size 8. This fact was never disclosed to Manning's defense counsel. Manning argues that this

8

evidence was critical since Manning wears a size 10 or larger shoe and thus could not have left the bloody print in the victims' apartment. The report indicating the shoe size is included in Manning's petition as Exhibit 16, and the affidavit of Richard Burdine, Manning's trial counsel, stating that this report was never disclosed.

¶22. The State has a duty to disclose exculpatory material. The U.S. Supreme Court has held that the "suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment..." Favorable evidence includes items that are either directly exculpatory or can be used for impeachment purpose. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L. Ed. 2d 104 (1972). The Eleventh Circuit has set forth a four-prong test to determine whether a *Brady* violation has occurred mandating a new trial.

> To establish a *Brady* violation a defendant must prove the following: (1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*United States v. Spagnoulo*, 960 F.2d 990, 994 (11th Cir. 1992), citing *United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir. 1989).

¶23. In this case, Manning demonstrates by including a copy, that the shoe-print report, indicating the likely size of the shoe existed and was known to the prosecution. Manning includes the defense attorney's affidavit stating that despite seeking discovery of all exculpatory evidence, this report was not disclosed. Furthermore, evidence that a shoe-print not matching Manning's shoe size was found at the scene of the crime presents a reasonable probability that the outcome of the proceedings would have been different. We find that Manning should be allowed to proceed in the trial court on this issue.

**F.** **The State knowingly presented false testimony concerning witness identification of Petitioner at Brooksville Gardens on the day of the homicides in violation of his Sixth, Eighth, and Fourteenth Amendments rights guaranteed by the federal constitution as well as analogous provisions of the Mississippi Constitution.**

¶24.    Another witness, Larry Harris, testified that he saw Manning at Manning's stepfather's apartment, Building 13, in Brooksville Gardens on the day of the murders.  However, Kelvin Bishop, Manning's stepfather, did not live in Building 13 on January 18, 1993. On that date, Bishop was living with his mother, and a review of police notes taken during the door-to-door canvas indicate that neither Bishop nor his girlfriend, Betty Robinson, lived in Building 13 at the time of the murders.  Manning asserts that Harris was called to testify even though the State knew that Harris was mistaken or making false statements.  Manning also notes that the only other witnesses who saw Manning in Brooksville Gardens on the day of the murder, testified that they saw him between 2:00 and 4:00 p.m., at least three hours before the murders took place.  Also, significantly that Harris and Ashford both testified that they saw Manning with other people in the early evening of January 18, 1993, and yet the State did not present any of those other witnesses.

¶25.    Manning notes that "in adjudicating a claim involving the use of false testimony, the 'any reasonable likelihood' standard has been applied to determine materiality.  Under that standard, '[a] new trial is required if the false testimony could have...in any reasonable likelihood affected the judgment of the jury." ***Barrientes v. Johnson***, 221 F.3d 741, 756 (5th Cir. 2000) (citing ***Napue v. Illinois***, 360 U.S. at 271; ***Giglio v. United States***, 405 U.S. at 153-54)); *see also* ***United States v. MMR Corp.***, 954 F.2d 1040 (5th Cir. 1991) ("[I]f the government used false testimony and knew or should have known of its falsity, a new trial must be held if there was any reasonable likelihood that the false testimony affected the judgment of the jury,").

¶26. In this instance, we find that Manning makes only assertions that testimony as to Manning's presence in Brooksville Gardens, at certain hours of the day, was false, and that such assertions are not sufficient to support post-conviction relief on this issue.

### G. Petitioner was denied his constitutional rights by the State's failure to disclose exculpatory information concerning Jo Jo Robinson.

¶27. Manning asserts that in the early stages of the investigation, several residents of Brooksville Gardens reported having witnessed suspicious activity. There were several neighbors who reported that they believed that Jo Jo Robinson, who lived in the same building as the victims, was involved in the murders. Nettie Mae Thompson, who lived just behind the victims' apartment, told police that at the time of the crime she saw three young black males running behind the victims' building and that she heard one of them say "Jo, why did you do that." She observed one man running around the side of the building in which she lived and her son later found a knife with blood on it in that location. Her son gave the knife to the police. She also reports that she saw other evidence that Jo Jo Robinson was involved, including what could have been Robinson's attempt to "clean up" after the murders.

¶28. While law enforcement had information implicating another suspect, they did not disclose this to defense counsel. Manning argues that reviewing courts have found failure to disclose evidence implicating other suspects is a violation of the *Brady* rule. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *Smith v. Secretary of N. M. Dep't of Corrections*, 50 F.3d 801 (10th Cir. 1995); *Jimenez v. State*, 918 P.2d 687 (Nev. 1996). Manning asserts that because the State failed to disclose exculpatory evidence, he is entitled to post-conviction relief.

¶29. In *Brady*, the U.S. Supreme Court established the principle that "suppression by the prosecution

11

of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. However, the Supreme Court has since held that not all failures to disclose exculpatory evidence constitute reversible error. ***Kyles v. Whitley***, 514 U.S. at 434. Rather, the question is whether there is a "reasonable probability" that the verdict would have been different but for governmental evidentiary suppression which "undermines confidence in the outcome of the trial." ***Kyles***, 514 U.S. at 434 (citing ***United States v. Bagley***, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

¶30. Manning is granted permission to proceed with post-conviction pleadings on the issues of whether the State presented false testimony, failed to provide mandated exculpatory evidence and whether Manning's trial counsel and direct appeal counsel were ineffective for failing to properly investigate and adequately defend.

> **H. Petitioner was denied his constitutional rights by the State's failure to disclose exculpatory information about Herbert Ashford.**

¶31. On this ground, Manning repeats portions of the some of the facts and assertions above. He asserts that the State failed to disclose that on numerous occasions, early in the investigation, Herbert Ashford said that he did not know anything about the murders and never mentioned Willie Manning. Manning again references the affidavit of Teresa Bush who lived with Ashford at the time and states that Ashford never mentioned Manning as having anything to do with the murders. Manning argues that disclosure of Ashford's prior denials and the fact that Bush never heard him mention Manning's involvement would have undercut Ashford's credibility. Reviewing courts have reversed convictions where the State suppressed significant impeachment evidence. *See, e.g.,* ***United States v. Pelullo***, 105 F.3d 117 (3d Cir.1997); ***Jean v. Rice***, 945 F.2d 82 (4th Cir.1991); ***Jimenez v. State***, 918 P.2d 687 (Nev.1996).

12

¶32.    We find that Manning fails to support this claim with anything more than assertions which are not sufficient to warrant post-conviction relief.

### I.    Petitioner was denied his constitutional rights by the State's failure to disclose additional exculpatory information.

¶33.    Manning asserts that the material above indicates that the State suppressed exculpatory evidence. Other suppressed material includes most of the notes taken on the door-to-door canvas conducted in Brooksville Gardens following the murders, including statements of other neighbors implicating Jo Jo Robinson and details regarding many of the assertions discussed above. Manning argues that the materiality of some of the information included in these undisclosed notes is evident. The notes include the glaring fact that the State's key witness (Lucious) could not have testified truthfully where it is shown that he didn't live in Brooksville Gardens until after the murders. Also included is information that could have been used to impeach Herbert Ashford and David Lindley and information that Jo Jo Robinson may have been involved in the murders.

¶34.    Manning argues that U.S. Supreme Court precedent instructs the State that its knowing use of or its failure to correct false testimony or its presentation of evidence which creates a materially false impression of the evidence, violates a defendant's right to due process. *Miller v. Pate*, 386 U.S. 1 (1967); *Napue v. Illinois*, 360 U.S. 264 (1959); *Alcorta v. Texas*, 355 U.S. 28 (1957); *Mooney v. Holohan*, 294 U.S. 103 (1935).  The U.S. Supreme Court has held that when the reliability of a given witness may well be determinative of guilt or innocence, non-disclosure of evidence affecting credibility, constitute a violation of due process. *Giglio v. United States*, 405 U.S. at 154.

¶35.    We find that Manning should be allowed to seek post-conviction relief on the question of whether

13

the State knowingly suppressed exculpatory evidence.

> **J.  In the alternative to grounds A through I, Manning asserts that he was denied the effective assistance of counsel at trial and on appeal.**

¶36.  Manning asserts that even through due diligence, trial counsel could not have been expected to discover the false or suppressed evidence.  However, if the Court concludes that trial counsel should have ascertained the facts, then Manning argues that he is due post-conviction relief due to counsel's ineffectiveness.  Manning asserts that trial counsel was ineffective for:

1. Failure to use information to impeach and discredit Lucious and law enforcement. In her affidavit, Kevin Lucious's girlfriend, Likeesha Jones Harris, states that she was shocked when she read an account of Lucious's testimony in the newspaper and that she contacted Manning's attorney (Mark Williamson). However, Williamson did not call her to rebut Lucious's testimony, nor did he conduct additional investigation as to whether Lucious lived in apartment 11E at the time of the murders.  Similarly, defense counsel was ineffective for not discovering the notes on the door-to-door canvas of the apartment complex in order to use that information to discredit Lucious.

2. Failure to impeach Larry Harris.  If defense counsel had information that Manning's stepfather did not live in Brooksville Gardens as the time of the crime, they could have used it to discredit Larry Harris's testimony that he saw Manning near the time of the attacks.  If counsel had impeached Harris (along with Lucious and Ashford), the State would have had no witness who could have placed Manning near the victims at the time of their deaths.

3. Shoe print.  If counsel had been provided the Footwear Case Notes, then they would have been obliged to elicit testimony that the crime lab determined the shoe to be a size 8 and that their client wore a 10-101/2.

14

4. Teresa Bush. Bush's name was disclosed to defense counsel in the context of the door-to-door interviews and counsel could conceivably have located her. Bush was living with Herbert Ashford and could have shed unfavorable light on Ashford's testimony that Manning was the perpetrator.

5. Investigating Jo Jo Robinson and other suspects. At least three witnesses informed law enforcement that they saw individuals coming from the victims' apartment about the time of the murders. None of those witnesses identified Manning, but at least two of the witnesses identified Jo Jo Robinson. Margaret Diane Coleman stated that on the evening of the murder she saw Jo Jo Robinson, Keith Robinson and Bullet Johnson in the victims' apartment. She later saw the three going up the hill behind the victims' apartment. Another witness reported to police that she saw three men running from the building, and still another witness stated that she had seen a dark colored car and that one of the men running from the victims' apartment got into the car. She also described what this man was wearing. Another witness stated that she saw the three men running from the apartment and that she heard one refer to the other as "Jo." This witness noted that she would have been willing to talk to Manning's lawyers but that no one ever contacted her. Jo Jo Robinson's own sister refutes Jo Jo's alibi for that night and instead stated that shortly before the bodies were discovered, Jo Jo ran into the apartment and went into the bathroom. The failure to discredit the State's key witnesses, failure to make a reasonable investigation and failure to make use of evidence have all been found to constitute ineffective assistance of counsel. *See, e.g. , **Steinkuehler v. Meschner**, 176 F.3d 441 (8th Cir. 1999); **State v. Dillard**, 998 S.W.2d 750 (Ark. 1999); **Commonwealth v. Allison**, 622 A.2d 950 (Pa. Super. Ct. 1993).**Pauling v. State**, 503 S.E.2d 468 (S.C.1998).

¶37. The State argues that these issues could have and should have been raised on direct appeal and, therefore, this claim is barred by waiver. Furthermore, the State contends that Manning has neither

15

demonstrated cause or actual prejudice sufficient to excuse the waiver.

¶38.    The standard for determining if a defendant received effective assistance of counsel is well settled. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant must demonstrate that his counsel's performance was deficient *and* that the deficiency prejudiced the defense of the case. *Id.* at 687. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Stringer v. State*, 454 So.2d 468, 477 (Miss. 1984), citing *Strickland v. Washington*, 466 U.S. at 687. The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Id.*

> Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.

*Stringer,* 454 So. 2d at 477, citing *Strickland*, 466 U.S. at 689. Defense counsel is presumed competent. *Washington v. State*, 620 So.2d 966 (Miss. 1993).

¶39.    Then, to determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mohr v. State,* 584 So.2d 426, 430 (Miss. 1991). This means a "probability sufficient to undermine the confidence in the outcome."*Id.* The question here is:

16

whether there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death.

*Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068. There is no constitutional right then to errorless counsel. *Mohr v. State,* 584 So.2d at 430 (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). *Cabello v. State,* 524 So.2d 313, 315 (Miss. 1988). If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end. *Mohr v. State,* 584 So.2d at 430; *Neal v. State*, 525 So.2d at 1281.

¶40. We find that Manning has set forth sufficient evidence to undermine confidence in the outcome of the trial. While some of the errors that Manning alleges are based on information that was not discoverable (or easily) discoverable at the time, his petition presents sufficient material to question the performance of Manning's trial counsel and his appellate counsel in this case. Therefore, we grant him leave to seek post-conviction relief on this ground.

> **K.      Petitioner was denied effective assistance of counsel due to trial counsel's failure to call Petitioner's brother to deny that the conversations about which Lucious testified ever took place.**

¶41. At trial Kevin Lucious claimed to have participated in conversations in which Willie Manning implicated himself in the deaths of the victims. Lucious also testified that Manning's brother, Marshon Manning, was present during the conversation. Defense counsel did not call Marshon to rebut Lucious's testimony. In fact, defense counsel never spoke to Marshon. In his affidavit, Marshon denies that any conversations involving his brother and Luscious ever took place. Reviewing courts have found trial counsel to have been ineffective when trial counsel failed to interview a potential witness. *See, e.g.,*

17

*Washington v. Smith*, 219 F.3d 620 (7th Cir. 2000); *Lord v. Wood*, 184 F.3d 1083 (9th Cir. 1999); *Holsomback v. White*, 133 F.3d 1382 (11th Cir. 1998).

¶42.    The State asserts that Manning is barred by the doctrine of waiver because Manning's two appellate lawyers have not been assailed in post-conviction pleadings. Even if Marshon's testimony has the potential for impeaching the testimony of Lucious, it would have failed to establish to a reasonable probability the outcome of the trial or the proceedings would have been different.

¶43.    We hold that this issue should be considered in the evidentiary hearing and a determination made by the trial court.

**L.      Manning also asserts that he was denied his constitutional rights due to the cumulative errors in the culpability phase and the penalty phase of the trial.**

¶44.    This Court may reverse a conviction and/or sentence based upon the cumulative effect of errors that do not independently require a reversal. *Jenkins v. State*, 607 So.2d 1171, 1183-84 (Miss. 1992); *Hansen v. State*, 592 So.2d 114, 153 (Miss. 1991). "It is true that in capital cases, although no error, standing alone, requires reversal, the aggregate effect of various errors may create an atmosphere of bias, passion and prejudice that they effectively deny the defendant a fundamentally fair trial." *Conner v. State*, 632 So.2d 1239, 1278 (Miss. 1993) (citing *Woodward v. State*, 533 So.2d 418, 432 (Miss. 1988)).

¶45.    Manning asserts that while each of the errors above warrant reversal, when all of the errors are taken together, the combined prejudicial effect requires reversal. *Randall v. State,* 806 So.2d 185 (Miss. 2001) (citing *Williams v. State*, 445 So.2d 798, 810 (Miss. 1984)). Manning also asserts that with respect to allegations of counsel's ineffectiveness and *Brady* violations, it is imperative that the Court consider the cumulative impact of the specific errors. *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 149,

146 L. Ed. 2d 389 (2000); *Kyles v. Whitley*, 514 U.S. 419 (1995).

¶46. The State contends that no error in part translates into no error to the whole and asserts that there is no reversal error in any part. Consequently, there is no reversible error as to the whole.

¶47. We find that Manning has demonstrated sufficient evidence of cumulative errors to warrant an evidentiary hearing.

> **M. At the penalty phase, Petitioner was denied his constitutional rights due to the trial court's repeated statements to the jurors that they were not to rely on sympathy; In the alternative, trial counsel was ineffective for not objecting to the trial court's mistaken and prejudicial statements concerning sympathy.**

¶48. Manning asserts that this Court has held that "a jury may not be instructed to disregard, in toto, sympathy." *King v. State*, 784 So.2d 884, 889 (Miss. 2001). During voir dire, the District Attorney remarked repeatedly that the jurors should not let sympathy enter into their verdict. During the penalty phase, Instruction C.01 instructed the jury not to be swayed by sympathy. The trial court repeated the anti-sympathy message. In *King*, this Court expressed concern about there being an "undue emphasis of the anti-sympathy admonition so as not to fetter unduly reasoned consideration of factors offered as mitigating." *Id.* Manning argues that *King* is an intervening decision which entitles him to a new sentencing hearing because the trial court and prosecutor repeatedly stressed that sympathy was to play no part in its deliberations.

¶49. Manning argues, in the alternative, if the Court concludes that *King* is not an intervening decision, then trial counsel was ineffective for not objecting to the prejudicial comments by the trial court and prosecutor, as well as the sentencing instructions.

¶50. The State argues that *King* does not qualify as an intervening decision and that the precedent that a jury may not be instructed to disregard, in toto, sympathy in a capital case has been around since 1988.

19

See *Pinkney v. State*, 538 So.2d 329, 351 (Miss. 1988). The State also argues that this does not qualify as an ineffective assistance of counsel claim where Manning's appellate lawyers did not raise this issue on direct appeal. The State also argues that the message to the jury was not so egregious as to cause any concern that sympathy would have "no" part, as opposed to "some" part, in the jury's deliberations during the penalty phase.

¶51.    This Court has stated that "the jury cannot be instructed to disregard sympathy altogether." *Evans v. State*, 725 So.2d 613, 691 (Miss. 1997). However, they may be cautioned against being swayed by such considerations. *Woodward v. State*, 843 So.2d 1, 20 (Miss. 2003); *Flowers v. State*, 842 So.2d 531, 563 (Miss. 2003). This Court has held that where no objection was made at trial, the issue is procedurally barred by the provisions of Miss. Code Ann. § 99-39-21(1). *Woodward v. State*, 843 So.2d at 20. Furthermore, where the petitioner fails to show actual prejudice, this constitutes a waiver and he is procedurally barred from raising this issue. *Id.* citing *Wiley v. State*, 750 So.2d 1193, 1209 (Miss. 1999). We agree that *King* is not an intervening decision where it has long been established that a jury cannot be instructed to disregard, in toto, sympathy in a capital case. Furthermore, because Manning failed to object at trial and fails now to demonstrate that he was prejudiced by the District Attorney's remarks, we find that he is procedurally barred from raising the issue now.

> **N.    Petitioner was denied his constitutional rights due to the defense counsel's failure to develop and present evidence in mitigation of punishment.**

¶52.    Manning asserts that trial counsel had a duty to unearth all relevant mitigating evidence and to conduct a thorough investigation into the range of possible mitigating evidence. The record indicates that trial counsel failed to interview witnesses who had knowledge of Manning's family and were willing to cooperate with defense counsel. Manning notes also that there are letters in the file from Mark Williamson

(defense counsel) to Richard Burdine (co-counsel) suggesting witnesses for the mitigation portion of the penalty phase of trial. Those witnesses were apparently never contacted. Furthermore, Manning includes affidavits from an attorney in Louisiana and an investigator which declare there to be valuable mitigating evidence that was never presented at trial. Failing to do so, Manning argues, is evidence of trial counsel's deficient performance and satisfies both prongs of *Strickland*.

¶53.	The State argues that this claim was raised and litigated on direct appeal and is now barred by the doctrine of res judicata.

¶54.	We agree with the State. This claim was raised on direct appeal, and the Court found that Manning failed to show prejudice related to the trial counsel's failure to call other witnesses. Furthermore, the Court noted that "additional character witnesses would not have, with any reasonable probability, tipped the balance between mitigators and aggravators." *Manning v. State*, 726 So.2d at 1170. Therefore, this claim is procedurally barred where this Court has already addressed its merits.

### O.	Petitioner was denied his constitutional right by the State's reliance on an invalid statutory aggravating circumstance; his unconstitutionally obtained prior murder convictions.

¶55.	Manning asserts that the prosecution relied, in part, on the statutory aggravating circumstance that "the defendant was previously convicted of another capital offense or felony involving the use or threat of violence to the person." Miss. Code Ann. § 99-19-101(5)(b). Specifically, Manning's conviction for the murders of Jon Stickler and Tiffany Miller. *Manning v. State*, 726 So.2d 1152 (Miss. 1998). The jury found the existence of this statutory aggravating circumstance beyond a reasonable doubt. Manning argues that the conviction in the Steckler/Miller murders was unconstitutionally obtained and notes that he has filed a petition for post-conviction relief and incorporates by specific reference the grounds and allegations attacking the validity of his conviction. *Manning v. State*, Oktibbeha County Cir. Ct. No. 2001-0144-

21

CV, Supreme Court No. 2001-DR-00230-SCT. Manning asserts that if the Supreme Court ultimately reverses his conviction in that case, then he is, at a minimum, entitled to a new sentencing proceeding in this second case. *Johnson v. Mississippi*, 486 U.S. 578, 108 S. Ct. 1981, 100 L. Ed. 2d 575 (1988).

¶56.    The State argues that Manning's claim has already been decided and rejected on direct appeal. We agree.

¶57.    This Court has previously rejected Manning's claim that his conviction in the murder of two Starkville students was unconstitutional. *Manning v. State*, 735 So.2d 323, 351 (Miss. 2000). Manning's petition is denied as to this issue.

## CONCLUSION

¶58.    We grant Manning leave to seek post-conviction relief at an evidentiary hearing in the trial court on the issues of whether the State withheld exculpatory evidence, whether the State presented false evidence and whether Manning was denied effective assistance of counsel both at trial and on appeal.

¶59.    We deny Manning's petition in all other respects.

¶60.    **APPLICATION FOR LEAVE TO SEEK POST-CONVICTION RELIEF, GRANTED IN PART AND DENIED IN PART.**

**SMITH, C.J., WALLER, P.J., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. COBB, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**