ISHEE, J.,
 

 for the Court:
 

 ¶ 1. Gregory Frazier was convicted in the Circuit Court of Bolivar County of aggravated assault. He was sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC). Aggrieved, he now appeals alleging ineffective assistance of counsel based upon his attorney’s failure to object to impermissible testimony. Finding no obvious deficient performance by Frazier’s counsel, we affirm the circuit court’s judgment.
 

 
 *801
 
 FACTS
 

 ¶ 2. Frazier and Crystal Wadlington had been dating approximately six years before the couple broke up approximately two weeks before April 9, 2008. On April 9, 2008, Frazier began harassing Wadlington through numerous phone calls and text messages. At trial, Dr. Evelyn Smith, Director of Nursing at Coahoma Community College, testified that one of her students (Wadlington) “burst into” her office visibly upset saying that her boyfriend was calling her and coming to kill her. Dr. Smith quickly notified the local police chief. Once officers arrived at the scene, Wad-lington received another phone call from Frazier. Wadlington proceeded to put the call on “speaker phone” so those around her could listen. Dr. Smith, who was still with Wadlington, overheard the voice of a man “threatening this young lady.”
 

 ¶ 3. After another threatening phone call from Frazier, Wadlington drove to a courthouse in Clarksdale, Mississippi, to file for a restraining order against Frazier, but she was told that she would have to seek protection in Bolivar County. Wadlington proceeded to drive back to her house in Cleveland, Mississippi. As she traveled home, she spoke with Frazier for most of the way. She testified that, by , the time she made it home, Frazier was crying, asking Wadlington to come over. He assured her that everything would be okay, and that he just wanted to talk. Finally, Wadlington agreed to go to Frazier’s house.
 

 ¶ 4. Wadlington and Frazier disagree as to what took place once she arrived at Frazier’s home and walked back to his bedroom. Therefore, we will briefly address each account.
 

 I. Frazier’s Account
 

 ¶ 5. Frazier claims that Wadlington, for reasons unknown, attempted to lay beside him in his bed, but because he did not trust her, he rejected her advances. After his rejection, Frazier claims Wadlington began to clinch her purse close to her body. She then got up and walked to the restroom. While she was in the restroom, Frazier, believing Wadlington had a gun in her purse, retrieved his gun from under his bed and placed it under the sheets next to him.
 

 ¶ 6. Once Wadlington returned from the restroom, she sat in the recliner and placed her purse beside her feet. This apparently alarmed Frazier, as he grabbed his gun and rolled out of his bed. He claimed he never once pointed the gun at Wadlington. At this moment, Frazier claimed that Wadlington pulled a knife from her purse. Frazier further stated that his gun then accidently discharged as he attempted to disarm her. Frazier immediately dialed 911 and began administering first aid to Wadlington.
 

 II. Wadlington’s Account
 

 ¶ 7. Wadlington’s account is much different. Wadlington asserts that as soon as she walked into Frazier’s room, he became confrontational. She claimed that Frazier began telling her to take off her clothes, and he accused her of “playing” him. Although she refused to take off her clothes, she sat on the bed next to Frazier and took off her shoes and placed her phone down. Frazier then demanded that Wad-lington hand over her phone to him. When she refused, Frazier stated: “I’m not going to ask you again,” at which point Wadlington just “threw [the phone] on the bed.”
 

 ¶ 8. Frazier then began scrolling through Wadlington’s call logs and text messages. As he was doing so, a “private” caller called Wadlington’s phone. As the phone continued to ring, Frazier pointed the gun at Wadlington’s head demanding
 
 *802
 
 her to answer it. She did, and after a brief exchange, the caller hung up. Frazier demanded to know the identity of the caller, and Wadlington maintained she did not know. Frustrated, Frazier then shot Wadlington in the leg. He then put the gun back to her head, and he asked her once again for the identity of the caller. Before she could answer, Frazier’s mother knocked on the bedroom door and asked “what’s going on in there?” Frazier then went to Wadlington’s purse and took out $270. At this point, Wadlington informed Frazier she was getting dizzy, and shortly afterward, she passed out.
 

 ¶ 9. At trial, Wadlington testified that she had nothing in her hand at the time she was shot. She further testified that she had been shot in her femoral artery and vein, which caused massive bleeding and loss of consciousness.
 

 STANDARD OF REVIEW
 

 ¶ 10. The standard for determining whether or not a defendant received effective assistance of counsel is well settled. To prevail on a claim of ineffectiveness of counsel, a defendant must demonstrate that his counsel’s performance was (1) deficient and (2) that counsel’s deficiency actually prejudiced the defense of the case.
 
 Burnside v. State,
 
 882 So.2d 212, 216 (¶ 20) (Miss.2004) (quoting Bu
 
 rns v. State,
 
 813 So.2d 668, 673 (¶ 14) (Miss.2001)). “Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable. The focus of the inquiry must be whether counsel’s assistance was reasonable considering all the circumstances.”
 
 Id.
 
 (citations omitted).
 

 DISCUSSION
 

 ¶ 11. Frazier claims on appeal that his counsel’s repeated failure to object to certain testimonies denied him his constitutional right to effective assistance of counsel.
 

 ¶ 12. We have held “[cjounsel’s choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall[s] within the ambit of trial strategy and will not stand as support for an ineffective assistance of counsel claim.”
 
 Hancock v. State,
 
 964 So.2d 1167, 1175 (¶ 18) (Miss.Ct.App.2007). There is a strong presumption “that the attorney’s conduct fell within the wide range of reasonable professional assistance.” Car
 
 r v. State,
 
 873 So.2d 991, 1003 (¶ 27) (Miss.2004). In
 
 Mohr v. State,
 
 584 So.2d 426, 430 (Miss.1991), the Mississippi Supreme Court discussed the wide latitude given to attorneys and our limited review of their choice of trial strategy. The supreme court emphasized:
 

 Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.
 

 Id.
 
 at 430 (quoting
 
 Lambert v. State,
 
 462 So.2d 308, 316 (Miss.1984)) (internal citation omitted).
 

 ¶ 13. After careful review of the record as a whole, we find no obvious deficient performance by Frazier’s counsel. Although Frazier’s counsel could have
 
 *803
 
 properly objected to certain testimonies, it is improper for this Court, without more, to second-guess defense counsel’s trial strategy. Thus, we decline to do so here. When counsel’s defective performance is not obvious, the parties must “stipulate that the record is adequate” for direct review of an ineffective-assistance-of-counsel claim before the merits can be addressed on direct appeal.
 
 See Read v. State,
 
 430 So.2d 832, 841 (Miss.1983).
 

 ¶ 14. Seeing no obvious deficient performance by his trial attorney or any stipulation that the record is adequate, we affirm without prejudice to Frazier’s right to file for post-conviction relief, if he so chooses.
 

 ¶ 15. THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY $93,000 IN RESTITUTION, $10,136.83 TO THE MISSISSIPPI CRIME VICTIMS’ COMPENSATION FUND, AND $250 TO THE INDIGENT DEFENSE FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.